Larry William **SCHMIDT**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 73–1057.

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1973.

Decided Aug. 8, 1973.

Preston M. Penney, Iowa City, Iowa,
for appellant.

Richard Barry, Asst. U. S. Atty., Des
Moines, Iowa, for appellee.

Before CLARK,* Associate Justice,
HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

Larry William Schmidt appeals his
conviction on two counts of violating
provisions of Selective Service laws and
regulations. A jury found appellant
guilty of knowingly and wilfully failing
to report for and submit to induction
into the Armed Forces of the United
States in violation of 50 U.S.C. App. §
462 (count I). He was also found guilty
of wilfully and knowingly failing to keep
his local draft board currently informed
of his home address and marital status
(as required by Selective Service Regu-
lation 32 C.F.R. 1641.7(a)) [1] during the

---

* The Honorable Tom C. Clark, Retired As-
sociate Justice of the United States Su-
preme Court, sitting by designation.

1. The full text of this regulation reads :
   (a) It shall be the duty of every
classified registrant to keep his local
board currently informed of his occupa-
tional, marital, family, dependency, and
military status, of his physical condition,
of his home address, and of his receipt
of any professional degree in a medical,
dental, or allied specialist category.
Every classified registrant shall, within
10 days after it occurs, report to his lo-
cal board in writing every change in
such status and in his physical condition
and home address and his receipt of
any such professional degree.

period from May 1, 1970, to his indictment on February 17, 1971 (count II) also in violation of § 462. Although the presiding judge at trial was the Hon. C. Nils Tavares of Honolulu, Hawaii, Judge Stuart of Iowa undertook to sentence Schmidt.

■ The district court records show that Schmidt was treated as a young adult, and sentence was imposed pursuant to the Federal Youth Corrections Act (18 U.S.C. § 5005 et seq.). The court placed Schmidt on probation for a period of three years. Since the sentence was general on the two-count conviction, it may be sustained if the defendant was properly convicted under either count. Reed v. United States, 401 F.2d 756 (8th Cir. 1968), cert. denied, 394 U.S. 1021, 89 S.Ct. 1637, 23 L.Ed.2d 48 (1969).

Schmidt raises a plethora of objections to his conviction, most of them directed to his conviction for failing to report for and submit to induction.[2] He argues the invalidity of his conviction on this count because he did not receive actual notice of the order requiring him to report for induction on June 3, 1970, until October of that year, after he had returned from an extensive vacation tour of Europe.

We find it unnecessary to consider the separate claims of error and insufficiency of the evidence to support the convictions under count I, since the record reflects a proper conviction under count II, failure to keep the draft board currently informed of home address and other matters. We, therefore, rest our affirmance upon the conviction under count II.

■ The record discloses the essential facts. Schmidt registered for the

draft on December 7, 1964. He was given a high school deferment until July, 1965. From September 1965, until June, 1969, he was exempted from the draft as a divinity student. Thereafter, since he planned to join the Papal Volunteers, he received an occupational deferment until October 15, 1969, when, for reasons of health, he was unable to pursue the Papal Volunteer program and was reclassified I–A. Schmidt underwent a preinduction physical examination which he passed. On November 21, 1969, the draft board mailed a notice of Schmidt's acceptability for service to his designated home address in Brookfield, Wisconsin, which was the address of Schmidt's parents.

Prior to his passing the physical, Schmidt kept in close touch with his local draft board; however, after November 21, 1969, the local board heard nothing more from Schmidt. On January 15, 1970, the local board sent a current status questionnaire to Schmidt at the Brookfield, Wisconsin, address. This questionnaire was not returned.

Schmidt's Selective Service file discloses that he notified his local board of a change of home address on May 3, 1966, and that he returned a current information questionnaire (SSS form 127) on September 15, 1966. He returned similar information questionnaires on December 26, 1967, and November 14, 1968, listing Brookfield, Wisconsin, as his home address. On November 5, 1969, Schmidt wrote the board asking that a duplicate copy of the order to report for a physical examination be mailed to his Davenport, Iowa, address. The board complied with this request, but the duplicate order was returned undelivered to the board.

The indictment charged Schmidt with failing "to keep his local board currently informed of his occupational, marital, family, and dependency status and of his home address * * *." The appellant concedes that the crucial question on this appeal relates to the appellant's home address.

2. As to the conviction for failure to report for induction, Schmidt claims the induction order was illegal because the local board denied him due process by failing to maintain a complete file as required by law and by misinforming him of his rights under the Selective Service laws. He further alleges that he was denied due process and a fair trial by improper admission of certain evidence, by improper exclusion of other evidence, and by improper instructions to the jury.

The record discloses that Schmidt did not attend college after June, 1969. He married in March of 1970. At that time he was working as a shipping clerk in Rock Island, Illinois, and apparently lived in Davenport, Iowa. He and his bride departed for an extended stay in Europe on June 2, 1970. Prior to that date, the board, on May 14, 1970, mailed to Schmidt's Brookfield, Wisconsin, address an order requiring him to report for induction on June 3, 1970. This order was received and opened by his mother. She testified that she had had no contact with her son after April of 1970 until his return from Europe the following fall. She said that she had called his wife's mother in Davenport and left a message for the defendant to call her. Schmidt testified he did not actually learn of the induction order until October of 1970 when he visited his parents.

Schmidt, after returning from Europe in late August, looked for a job and found one in Iowa City, Iowa. He established residence there at least by October of 1970. He testified that at that time he was working at a "regular job" and "receiving mail" at an "open address" in Iowa City. Yet he made no effort to contact his draft board at any time prior to the issuance of the indictment. The record shows that Schmidt did not at any time actually live at his parents' address in Brookfield, Wisconsin, during the period mentioned in the indictment, May 1, 1970, to February 17, 1971 (the indictment date).

Thus, on these undisputed facts, it is quite clear that the jury was entitled to find that Schmidt failed to comply with the regulation which required that he keep the draft board currently informed of his home address. Schmidt testified unequivocally that he did not intend to be drafted even if he had received his notice of induction. Taking into account Schmidt's failure to communicate his actual whereabouts to his parents from April, 1970, until he left for Europe and for over a month after his return from Europe, his failure to advise his draft board of his new home address after his marriage and on his return from Europe, and his leaving for Europe after he learned that he was physically qualified for military duty, we believe the evidence amply justified a jury finding that he wilfully and knowingly failed to comply with the Selective Service Regulation, 32 C.F.R. 1641.7(a). Thus, we think the conviction justified on count II.

■ It appears also that Schmidt wilfully and knowingly failed to comply with the induction order after receiving notice of its contents in October of 1970. An induction order requiring a registrant to report at a specific date imposes a continuing duty on the registrant to submit to induction. White v. United States, 403 F.2d 1005 (8th Cir. 1968), cert. denied, 394 U.S. 920, 89 S.Ct. 1196, 22 L.Ed.2d 454 (1969). In *White*, the indictment charged the registrant with refusing to report for induction continuously from the date specified in the order to the date of the indictment. *Id.* at 1006–1007. Here, the indictment only charged a failure to report on or about June 3, 1970. Appellant strenuously argues that the indictment required the government to prove a wilful intent on June 3, 1970, to disregard the order to report for induction and that the evidence fell short of establishing such intent at that time. As we have already observed, we need not resolve this issue to sustain the general sentence which is supported by the count II conviction.

This case was fairly tried and we find no error in the proceedings which taints the conviction on count II. Thus the conviction and sentence are affirmed.[3]

---

3. We add a caveat. We have previously expressed our disapproval of a general sentence upon a multiple count conviction. Peoples v. United States, 412 F.2d 5 (8th Cir. 1969). We do not imply our approval of this procedure in the ordinary case by our affirmance here. However, since the sentencing judge pronounced sentence pursuant to the Federal Youth Corrections Act and placed defendant on probation for three years, the failure to specify a similar separate probationary sentence on each count would seem to be immaterial.