UNITED STATES of America, Appellee,

v.

Keith M. FREISINGER, Appellant.

No. 90–2084.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1991.

Decided June 24, 1991.

Thomas J. O'Flaherty (as appointed counsel, on the appeal only), Cedar Rapids, Iowa, for appellant.

Daniel C. Tvedt (argued), and Timothy Gallagher, on brief, Cedar Rapids, Iowa, for appellee.

Before MAGILL, Circuit Judge, ROSS, Senior Circuit Judge, and HUNTER,[*] Senior District Judge.

ELMO B. HUNTER, Senior District Judge.

This is an illegal drugs and firearms case. In August, 1989, an Iowa deputy sheriff placed appellant Freisinger under arrest for drunken driving. The deputy, along with other officers, confiscated from Freisinger's car a film container with a white residue in it, a gun case containing a rifle and ammunition, and $2,460 in cash. The officers also saw, but did not then search, two large plastic bags on the floor and passenger seat. After impounding the car, an inventory search uncovered a sunglasses case containing two plastic bags of nearly 81 grams of cocaine, a number of "bindles" or pharmacy folds used for delivery of cocaine, spoons which could be used to heat or "cook" drugs, and a loaded .32 caliber revolver and two .357 magnum revolvers, all three of which were in a knotted pillowcase which was inside one of the large plastic bags.

After four days of trial, a jury convicted Freisinger on one count of possession with intent to distribute cocaine, and four counts of carrying a firearm during the commission of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). The firearms convictions were based on Freisinger's carrying four firearms during the single drug trafficking offense. The district court sentenced Freisinger to 27 months imprisonment on the drug count and five years each on the firearms counts to be served consecutively to the 27-month sentence. Three of the sentences imposed on the firearm convictions, however, were to run concurrently to each other. Thus, Freisinger was sentenced to 27 months on the drug conviction, to be followed by three concurrent five-year sentences, all of those to be followed by the other five-year sentence, for a total of 147 consecutive months imprisonment. On appeal, Freisinger challenges: 1) the propriety of remarks which were part of the government's closing argument; 2) the sufficiency of the evidence on the issue of whether he was "carrying" a firearm in violation of section 924(c)(1); and 3) the multiple convictions and sentences for the firearms convictions despite the fact that there was but one drug trafficking offense. We affirm in part, reverse in part and remand with instructions.

## I.

■ Freisinger complains that in closing arguments government counsel improperly injected his personal beliefs as to the credibility of government witnesses and personalized the arguments with the repeated use of the pronoun "I."[1] First we address Freisinger's contention that government counsel personalized the closing argument and overused the personal pronoun "I," in such phrases as "I suggest to you that" and "I submit to you that." Freisinger suggests that flagrant use of that pronoun could be construed as improper commentary. Thus, he points out that government counsel used "I" 35 times during closing arguments. No such tallying is an indication of improper commentary nor can it measure the degree of impropriety if there is any. Use of the personal pronoun "I" is

---

[*] The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

[1.] Freisinger also argues that government counsel inaccurately characterized the evidence by stating that three of the guns in appellant's possession were loaded. We find that to be a fair comment on the evidence and accordingly reject this argument as meritless.

a normal and ordinary use of the English language. If courts were to ban the use of it, prosecutors would indulge in even more legalese than the average lawyer, sounding even more stilted and unnatural. As a simple illustration of how natural it is to use "I" in conversation—or more specifically, in arguments before a jury—defense counsel in this case himself used the pronoun 51 times. Of course, as discussed below, prosecutors have a duty to refrain from suggesting that they know something that the jury does not. That does not mean, however, that prosecutors should refrain from all use of the pronoun "I." We therefore find nothing improper in the Assistant United States Attorney's use of the pronoun "I."

■ On the other hand, it is improper for government counsel to vouch for a witness's veracity. *United States v. Peyro*, 786 F.2d 826, 831–32 (8th Cir.1986). The reason for the rule is articulated well in *United States v. Modica*, 663 F.2d 1173 (2d Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982), where the court wrote:

> The American Bar Association Standards for Criminal Justice declare: "It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or guilt of the defendant." ABA Standards for Criminal Justice, Standard 3—5.8(b) (1980) [hereinafter cited as "ABA Standard (number)"]. The policies underlying this proscription go to the heart of a fair trial. The prosecutor is cloaked with the authority of the United States Government; he stands before the jury as the community's representative. His remarks are those, not simply of an advocate, but rather of a federal official duty-bound to see that justice is done. The jury knows that he has prepared and presented the case and that he has complete access to the facts uncovered in the government's investigation. Thus, when the prosecutor conveys to the jurors his personal view that a witness spoke the truth, it may be difficult for them to ignore his views, however biased and baseless they may in fact be.

*Id.* at 1178–79.

In efforts to circumvent the rule, counsel too often employ phrases such as "I suggest that" or "I submit that" (as was done in this case), which are no less improper when they convey personal belief as to a witness's credibility. Such improper commentary, however, rarely necessitates reversal because any resulting prejudice is usually not so great "as to deprive [the defendant] of a fair trial." *United States v. Pierce*, 792 F.2d 740, 742 (8th Cir.1986). The *Modica* court acknowledged the dilemma, noting that "this Court has often brandished the sword of reversal only to resheath it in the absence of substantial prejudice." 663 F.2d at 1182.

■ This Court has previously commented on the frequency with which it has had to address the "acceptable limits of closing argument." *Pierce*, 792 F.2d at 742. While reversal of convictions is not the proper remedy in cases where no substantial prejudice has resulted from inappropriate remarks made during closing argument, prosecutorial overreaching should not go unchecked. The *Modica* court outlined a catalog of sensible remedies which, in the future, should be utilized as a means of extracting compliance with ethical standards.

In the present case, government counsel's remarks during closing argument were clearly improper. He employed the "I submit that" device in arguments like, "I submit to you that there is no reason for Randy and Diane Herbst to drive here from Dubuque, Iowa and tell you anything but the truth," and "I submit to you that the testimony that you heard from the officers was the truth." Transcript of Final Arguments at 19, 23. Counsel also argued, "They came here and told the truth." Transcript of Final Arguments at 41. This kind of argumentation is not only improper, it is unnecessary. Counsel can just as easily argue issues of credibility without injecting personal views. The kind of arguments made here at the very least suggests that the government may know something

that the jury does not. Government counsel must eschew that kind of argumentation, even when couching the argument in less brazen language.

■ Freisinger did not object to the improper remarks at trial and therefore asks us to review the matter for plain error under Rule 52 of the Federal Rules of Criminal Procedure. First, we simply note that because improper closing remarks are reversible only if they are so prejudicial as to deprive the defendant of a fair trial, there is no difference between improper remarks which require reversal where an objection to the remarks has been preserved and remarks which constitute plain error. If a prosecutor's remarks are so prejudicial that they deny the defendant a fair trial, then those remarks must, *ipso facto*, affect a substantial right of the defendant: the right to a fair trial. In this case, however, the government's remarks—while unquestionably improper—did not deprive the defendant of a fair trial. The evidence was more than sufficient to support the jury's verdict. Therefore, reversal of the convictions on that basis is not warranted. In the future, however, government counsel should be on notice that while their misconduct may not result in reversal of convictions, it may result in the imposition of sanctions along the lines suggested in *Modica*.

## II.

■ Freisinger also argues that the evidence is insufficient to support a finding that he "carried"[2] the four weapons found in the car, but this is just a clever way of disguising a jury instruction issue which has not been preserved for review. Even viewing the evidence in the light most favorable to the appellant—which is just the opposite of the proper standard of review here—the evidence conclusively established that there were four firearms in the passenger compartment of Freisinger's car. That alone constitutes "carrying" as that term is used in common parlance. Having failed to offer a jury instruction defining "carries," Freisinger cannot now be heard to complain that the ordinary meaning of the word is not the same as the meaning of that word as used in section 924(c)(1). Thus, because carrying a firearm in a vehicle is within the ordinary meaning of "carrying a firearm," and because the evidence was more than sufficient to support a finding of the former, the challenge to the sufficiency of the evidence fails.

■ Even reviewing this issue under the plain error standard, there was simply no error in the district court's failure to give an instruction on the meaning of "carries." Not only does the common usage of "carries" include "carries in a vehicle," at least one other court has held that "carries," within the meaning of section 924(c)(1), includes carrying a firearm in a vehicle. *United States v. Cardenas*, 864 F.2d 1528, 1535 (10th Cir.), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989); *cf. United States v. Feliz–Cordero*, 859 F.2d 250, 253 (2d Cir.1988) ("Neither the legislative history of section 924(c)(1) nor case law in this circuit suggest that the term 'carry' should be construed as having any meaning beyond its literal meaning.").[3] The *Cardenas* court carefully considered the legislative intent behind the usage of the word "carries," and we agree that "when a motor vehicle is used, 'carrying a weapon' takes on a less restrictive meaning than carrying on the person. The means of carrying is the vehicle...." *Cardenas*, 864 F.2d at 1535.[4] *Cf. United*

---

**2.** 18 U.S.C. § 924(c)(1) provides in pertinent part:

> Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years....

**3.** While it is true that mere possession of a firearm does not come within the "uses" provision of section 924(c)(1), *United States v. Lyman*, 892 F.2d 751, 753 (8th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990), it is equally true that mere possession may very often support a conviction under the "carries" provision of that section.

**4.** After concluding that he was not "carrying" a firearm because the firearms were not readily available, Freisinger then argues that he was not "using" a firearm also because the firearm was

*States v. Foote*, 898 F.2d 659, 664 (8th Cir.) (defendant did not need personally to possess the firearm in order to be convicted of "using" a firearm in violation of section 924(c)(1)), *cert. denied,* —— U.S. ——, 111 S.Ct. 342, 112 L.Ed.2d 307 (1990).

## III.

■ Next, we turn to Freisinger's argument that section 924(c)(1) does not authorize multiple convictions for carrying more than one firearm during the course of one drug trafficking offense. Section 924(c)(1) proscribes the carrying (or use) of "*a* firearm" during the commission of "any crime of violence or drug trafficking crime." The government contends that the multiple convictions are permissible under the statute. The question of how many convictions can lawfully be obtained under these circumstances is a question of the appropriate unit of prosecution, and that is a question of legislative intent. *Castaldi v. United States,* 783 F.2d 119, 121 (8th Cir.), *cert. denied,* 476 U.S. 1172, 106 S.Ct. 2897, 90 L.Ed.2d 983 (1986). Congress' intent, however, must be clear. "When Congress fails to set the unit of prosecution with clarity, doubt as to congressional intent is resolved in favor of lenity for the accused." *United States v. Kinsley,* 518 F.2d 665, 666 (8th Cir.1975).

In *Kinsley* the court was confronted with the issue of whether a felon's possession of four firearms constituted one or four violations of 18 U.S.C. § 1202(a) which prohibited a convicted felon's possession of "any firearm." The court noted that "in many of the cases in which courts have found ... ambiguity [in connection with the allowable unit of prosecution], the object of the offense has been prefaced by the word 'any.'" *Id.* at 667. After review-

ing the statutory language, the legislative history, and the statutory scheme, the court went on to hold that the phrase "any firearm" under 18 U.S.C. § 1202(a) was ambiguous. Resolving that ambiguity in favor of the accused, the court held that each of the appellants, who together possessed four firearms, had committed only one offense, not four. In contrast, the court noted that because "26 U.S.C. § 5861(d) is drawn in terms of '*a* firearm,' the provision arguably suffers from no ambiguity." *Id.* at 670 n. 10.

More recently, in *United States v. Coiro,* 922 F.2d 1008 (2d Cir.1991), the court held that 18 U.S.C. § 1510(a), which prevents the obstruction, delaying, or prevention of "the communication of information relating to a violation of any criminal statute of the United States by any person to a criminal investigator," is ambiguous with respect to the allowable unit of prosecution. In that case the defendant had concocted a false story for two of his confederates. The government argued that the single act of devising the false story constituted two violations of section 1510 because the story was fabricated for two persons who were to relay the story to the FBI. Because the statute proscribes the obstruction of "the communication of information ... by *any person* to a criminal investigator," the court concluded that the allowable unit of prosecution was unclear. *Id.* at 1014–15. Use of the word "any" in the phrase "any person" made the phrase ambiguous. "In cases in this and other circuits, the word 'any' has 'typically been found ambiguous in connection with the allowable unit of prosecution,' for it contemplates the plural, rather than specifying the singular." *Id.* at 1014 (citing *Kinsley,* 518 F.2d at 668).[5]

not readily available. First, we disagree with the characterization that the firearms were not available; there was sufficient evidence for the jury to conclude that these weapons—one in a gun case and the others in a pillowcase inside a plastic bag—were readily available. Moreover, a firearm which is carried either on the person or in a vehicle will at best be "unavailable" (and thus not "carried" within the meaning of the statute) only in very rare cases, if ever.

Second, although the statute proscribes the using *or* carrying of a firearm during the commission of a drug trafficking crime, the jury was only instructed that they could convict under section 924(c)(1) if they found that Freisinger carried a firearm. The instruction did not mention "use" of a firearm. Therefore, it is irrelevant whether he "used" any of the firearms within the meaning of section 924(c)(1).

5. Under some circumstances, however, the legislative history and the statutory scheme may

Relying on the rule of lenity, the court resolved the ambiguity in Coiro's favor and required the district court to vacate one of the two convictions on remand. *Id.* at 1015.

Both *Kinsley* and *Coiro* suggest that a statute which prefaces the object of the offense by the word "a" is not ambiguous. In *Jackson v. United States*, 926 F.2d 763 (8th Cir.1991) (per curiam), the court held that under 26 U.S.C. § 5861(d), which proscribes possession of "a firearm which is not registered," the possession of each unregistered firearm supported a separate unit of prosecution "because the statute here refers explicitly to 'a firearm.'" *Id.* at 764. *Accord United States v. Nichols*, 731 F.2d 545 (8th Cir.), *cert. denied*, 469 U.S. 1085, 105 S.Ct. 589, 83 L.Ed.2d 699 (1984) *and Sanders v. United States*, 441 F.2d 412, 414 (10th Cir.), *cert. denied*, 404 U.S. 846, 92 S.Ct. 147, 30 L.Ed.2d 82 (1971). The *Kinsley*, *Coiro* and *Jackson* decisions and the plain language of section 924(c)(1) lead inexorably to the conclusion that the statute suffers from no ambiguity, either real or contrived.

One court has held that separate section 924(c)(1) convictions may be obtained where there are multiple drug trafficking crimes or multiple crimes of violence, but "not ... because more than one gun was involved." *United States v. Henry*, 878 F.2d 937, 942 (6th Cir.1989). In *Henry*, the defendant committed two drug trafficking crimes with three firearms. The government included two section 924(c)(1) counts in the indictment. Each of the two gun counts in the indictment referred to both of the drug trafficking offenses, rather than predicating separate section 924(c)(1) charges on the separate underlying drug trafficking offenses. The court concluded that the government *could* have charged more than one section 924(c)(1) violation, but only by basing each count on a different drug trafficking offense. *Id.* at 942–44.

The *Henry* court cited three cases in which multiple underlying offenses supported multiple section 924(c)(1) convictions. *United States v. Jim*, 865 F.2d 211 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989); *United States v. Fontanilla*, 849 F.2d 1257 (9th Cir.1988); *United States v. Chalan*, 812 F.2d 1302 (10th Cir.1987), *cert. denied*, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988). Only one of those three cases, *Fontanilla*, expressly held that multiple underlying offenses support multiple section 924(c)(1) offenses. In *Jim*, while it is clear that multiple section 924(c)(1) convictions were obtained on the basis of multiple underlying offenses, the court simply did not discuss whether multiple section 924(c)(1) convictions must be based on multiple underlying offenses. In *Chalan* the court held that felony murder and robbery (where the robbery was the felony supporting the felony murder charge) were but a single crime of violence; thus, even if multiple underlying offenses would support multiple section 924(c)(1) convictions—a question which the court did not have to decide—multiple section 924(c)(1) convictions were not proper in that case because there were not multiple underlying offenses.[6] From *Fontanilla's* holding that multiple underlying offenses would support multiple section 924(c)(1) convictions, the *Henry* court leaped—without any discussion—to the conclusion that multiple section 924(c)(1) offenses *must* be supported by multiple underlying offenses. We expressly reject the *Henry* court's conclusion as being supported neither by logic nor by law.

In another case, *United States v. Henning*, 906 F.2d 1392 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 789, 112 L.Ed.2d 852 (1991), the court cites *Henry* and *Chalan* as support for its holding that "where a defendant has been convicted of a single drug trafficking offense and more than one firearm was involved, a single

clarify Congress' use of the word "any." *Castaldi,* 783 F.2d at 122–23 ("each counterfeiting of a different denomination of postage stamps is an allowable unit of prosecution under 18 U.S.C.

§ 501," which prohibits the counterfeiting of "any postage stamp").

**6.** Nothing in *Chalan* suggests that more than one firearm was involved.

violation of § 924(c)(1) occurs and multiple consecutive sentences may not be stacked to account for it." *Id.* at 1399. The *Henning* court, with its reference to *Chalan*, seems to imply that some double jeopardy concern lurks beneath the surface of this issue. We see no implication of the double jeopardy clause in multiple convictions for each separate possession of a firearm during and in relation to a single drug trafficking crime, nor do we read *Chalan* to support the *Henning* court's contrary conclusion. As previously noted, in *Chalan* the court found that the multiple underlying offenses—felony murder and robbery—were but a single offense. By holding that only one crime of violence occurred, the court eliminated the only arguable basis for multiple section 924(c)(1) convictions in that case, because only one firearm was involved.[7]

■ We find neither *Henry* nor *Henning* persuasive. In resolving this issue of the allowable unit of prosecution, neither the *Henry* nor *Henning* court considered the legislative intent, even though Congress' intent is the determinative consideration. Congress unequivocally expressed its intent when it enacted section 924(c)(1), and we therefore need not look beyond the language of the statute to determine that intent. A statute which prefaces the object of the offense with the word "a" unambiguously authorizes singular units of prosecution. Thus, we hold that section 924(c)(1) authorizes prosecution for the possession of each firearm a defendant possesses during and in relation to a single crime of violence or drug trafficking crime.

## IV.

■ Finally, Freisinger argues that section 924(c)(1) does not authorize multiple sentences for multiple section 924(c)(1) convictions. At sentencing the government contended that each five-year sentence imposed on each of the gun counts should run consecutively to all the other sentences.[8] The government relied on the "other term of imprisonment" provision of section 924(c)(1) which states in relevant part:

Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, *nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment* including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.

18 U.S.C. § 924(c)(1) (emphasis added). The government has now stipulated that the imposition of multiple sentences under the circumstances of this case was improper and has requested us to remand for resentencing with instructions to the district court to impose a general sentence of five years on the firearms convictions. For reasons which we explain below, we disagree.

The Sentencing Guidelines do not govern the sentencing of section 924(c) convictions. U.S.S.G. § 2K2.4(a). Only one cryptic portion of section 924(c)(1) arguably addresses the matter of sentencing multiple convictions arising out of the possession of multiple firearms during a single underlying offense. The statute provides:

In the case of [a defendant's] second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years....

18 U.S.C. § 924(c)(1). When a defendant has been convicted of more than one violation of section 924(c)(1) because he was carrying more than one firearm during a single drug trafficking offense, there are two possible readings of the penalty provision. The first is that each of the convictions after the first one are "second or

---

7. Since only one firearm was involved and only one crime of violence occurred, there was simply no legal basis for more than one section 924(c)(1) conviction. Obviously, under such circumstances multiple section 924(c)(1) convictions would constitute double jeopardy.

8. The government did not contend, however, that the convictions on counts 3, 4 and 5 are "second or subsequent" convictions within the meaning of section 924(c)(1). Sentencing Transcript at 22.

subsequent" convictions which trigger the twenty-year enhancement provision.[9] On the other hand, "second or subsequent" convictions could just as reasonably be interpreted to mean only convictions arising from a second or subsequent transaction.

▮ The legislative history is scant on the subject, but as the Eleventh Circuit noted in *United States v. Rawlings*, 821 F.2d 1543 (11th Cir.), *cert. denied*, 484 U.S. 979, 108 S.Ct. 494, 98 L.Ed.2d 492 (1987), Congress' intention behind the statute was unmistakably clear:

> To persuade the man who is tempted to commit a federal felony to leave his gun at home. Any such person should understand that if he uses his gun and is caught and convicted, he is going to jail. He should further understand that if he does so a second time, he is going to jail for a longer time.

*Id.* at 1546 (quoting 114 Cong.Rec. 22231 (1968) (statement of Rep. Poff)). Representative Poff's statement lends support to the interpretation that a "second or subsequent" conviction means one arising from a "second or subsequent" transaction. Nothing else in the legislative history makes the statute any more clear. When, as here, a court is faced with two reasonable interpretations of a criminal statute and the congressional intent is ambiguous, the doctrine of lenity requires the court to adopt the less punitive alternative. *United States v.*

*Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971). We therefore hold that when a defendant has been convicted of more than one violation of section 924(c)(1) because he was carrying more than one firearm during a single drug trafficking offense, the convictions after the first one are not "second or subsequent" convictions within the meaning of the statute.[10]

Having concluded that the "second or subsequent" provision does not apply to circumstances like those of this case, we are left with little guidance for the proper sentencing procedure to be employed. Congress has indisputably required the imposition of a five-year sentence on a defendant's first violation of section 924(c)(1). If Congress had intended each firearm possessed in a single criminal transaction to serve as the basis for increasing the penalty, it could have explicitly provided for such a disposition. *Cf.* U.S.S.G. § 2K2.2(b)(1) (increasing offense level for violation of 18 U.S.C. § 922(*o*) or 26 U.S.C. § 5861 depending on number of firearms involved). Although Congress has authorized multiple convictions for the use or carrying of more than one firearm during a single crime of violence or drug trafficking offense, it has not clearly provided for the imposition of a total sentence exceeding five years in such a case. Therefore, again

---

**9.** The government has not at any time throughout these proceedings maintained that the second, third and fourth firearm convictions in this case are "second or subsequent" convictions under section 924(c)(1). However, one other court has interpreted multiple section 924(c)(1) convictions arising out of a single transaction as triggering the twenty year enhancement provision. *United States v. Nabors*, 901 F.2d 1351, 1358 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). While we find the *Nabors* interpretation of section 924(c)(1) to be reasonable, we decline to follow it because it overlooks the equally reasonable and far less punitory interpretation which we are compelled to adopt under the doctrine of lenity. *Also cf. United States v. Luskin*, 926 F.2d 372 (4th Cir.1991) (rejecting argument "that one cannot receive consecutive section 924(c) sentences for one episode of criminal behavior").

**10.** Although in *United States v. Foote*, 898 F.2d 659 (8th Cir.), *cert. denied*, — U.S. —, 111

S.Ct. 342, 112 L.Ed.2d 307 (1990), this Court held that "the term 'second' merely means 'another or additional conviction,' and may apply to two convictions contained in the same indictment," the Court there was faced with multiple section 924(c)(1) convictions that arose from crimes committed at different times. The court reasoned that since the prosecutor could have brought separate indictments for the separate crimes, it would be a waste of judicial resources to require separate indictments to trigger the enhancement provision of section 924(c)(1). The "second conviction" in *Foote* arose from a second transaction. Under our interpretation it is still possible for a case to involve a "second" section 924(c)(1) conviction that is not a "subsequent" conviction. In the present case, there was only one drug trafficking conviction. We reject any interpretation of Congress' use of the word "second" which is so broad that it includes convictions which are literally "second" convictions but which arose out of a single transaction.

following the doctrine of lenity, we hold that the sentence imposed on multiple section 924(c)(1) convictions based on a single underlying offense cannot exceed five years.

A sentence not exceeding five years could be achieved either by imposing a five-year sentence on each of the firearms convictions and ordering them to run concurrently or, as the parties suggest, by imposing a general sentence of five years on the four convictions. Between these two alternatives, the former is more in keeping with the traditional federal sentencing scheme. Multiple firearms convictions under other statutes governed by the Sentencing Guidelines would normally result in the imposition of separate but identical sentences on each of the convictions, and the sentences would be ordered to run concurrently. *See* U.S.S.G. § 5G1.2(d) ("counts shall run consecutively ... only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law") *and* U.S.S.G. § 5G1.2, comment ("To the extent possible, the total punishment is to be imposed on each count"). Thus, for the sake of uniformity in the federal sentencing scheme, we conclude that where multiple section 924(c)(1) convictions are based upon the carrying (or use) of more than one firearm during a single underlying offense, the sentencing court should impose a sentence of five years on each of the firearms convictions and order them to run concurrently.[11]

Accordingly, we affirm the convictions but remand for resentencing with instructions to the district court to impose sentences of five years on each of the four firearms convictions and order them to run concurrently to each other but consecutive-

ly to the sentence imposed on the drug trafficking conviction.

---

11. The imposition of general sentences on multiple convictions is a practice which has usually been discouraged in this Circuit. *United States v. Anderson,* 579 F.2d 455, 460 (8th Cir.), *cert. denied,* 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978); *Schmidt v. United States,* 482 F.2d 561, 563 n. 3 (8th Cir.1973); *Peoples v. United States,* 412 F.2d 5, 7 (8th Cir.1969). Accordingly, we decline to adopt the parties' suggestion that we do so in this case. *But see United States v. Torres,* 862 F.2d 1025 (3rd Cir.1988) (directing district court to impose a general sentence of five years on multiple section 924(c)(1) convictions).