_____

No. 96-2343
_____

United States of America,     *
                                   *
        Appellee,         *
                                     *   Appeal from the United States
     v.                       *   District Court for the
                                     *   Western District of Missouri.
James E. Rhodenizer, also known   *
as James E. Schelkle,           *
                                     *
        Appellant.        *

_____

Submitted: November 19, 1996

Filed: February 5, 1997
_____

Before RICHARD S. ARNOLD, Chief Judge, MAGILL, Circuit Judge, and
     LONGSTAFF,[1] District Judge.

_____

MAGILL, Circuit Judge.

     James E. Rhodenizer was convicted by a jury of possession of
methamphetamine with an intent to distribute, in violation of 21 U.S.C.
§ 841(a)(1) (1994), possession of marijuana with an intent to distribute,
in violation of 21 U.S.C. § 841(a)(1), and two counts of carrying a firearm
during and in relation to a drug trafficking offense, in violation of 18
U.S.C. § 924(c)(1) (1994). Rhodenizer appeals his conviction, asserting
five arguments in support of his claim that his case should be reversed.
We disagree

_____

      [1]THE HONORABLE RONALD E. LONGSTAFF, United States District
Judge for the Southern District of Iowa, sitting by designation.

and affirm the decision of the district court.[2]

**I.**

Acting on a report of unusual activity, Reserve Pulaski County Deputy Matt Sutcliffe set up surveillance of a campsite at the Gasconade Hills Resort in Pulaski County, Missouri on October 12, 1994. The campsite was owned by Deputy Sutcliffe's parents. Deputy Sutcliffe conducted surveillance for about five days. On one evening during his surveillance, he witnessed thirty-two cars coming and going from the campsite between the hours of 10:00 pm and 5:00 am. Between the time Deputy Sutcliffe began surveillance of the campsite on October 12 and the time Rhodenizer left the campsite on October 27, Rhodenizer was seen living at the campsite in a camper shell attached to a brown two-tone Ford pickup truck. On October 21, 1994, Missouri State Highway Patrol Trooper Vic Wilfong and Officer Mike Flett of the Lake Area Narcotics Enforcement Group joined the surveillance effort.

On October 27, 1994, the surveillance team saw Rhodenizer and some other people at the campsite making preparations to leave. Deputy Sutcliffe and Trooper Wilfong observed Rhodenizer enter his Ford truck and leave the campground. A grey Chevrolet and a red Mazda followed Rhodenizer's Ford truck off the campground. Also part of the surveillance team at this time were Officer Flett, Pulaski County Sheriff's Deputy Ron Walter, Sergeant James Tillman of the Pulaski county Sheriff's Department, and Pulaski County Sheriff J.T. Roberts.

When the vehicles left the campsite, Officer Flett was positioned at a nearby truck stop and was waiting for Rhodenizer's Ford and the other vehicles to pass by him. Sutcliffe and Wilfong

---

[2]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

-2-

tailed Rhodenizer to a residence, which they later learned was owned by Danny Basham. Sutcliffe and Wilfong passed the residence, and as they passed, they observed Rhodenizer's truck and the Chevrolet parked in front of the residence. Sutcliffe and Wilfong turned around to pass by the residence again, and on the second pass, they saw that no one was in either vehicle. A third pass in front of the Basham residence revealed that the Ford truck and the Chevrolet had left. Sutcliffe and Wilfong were able to catch up with the Chevrolet, but not Rhodenizer's Ford.

Deputy Walters saw the Ford pickup and the grey Chevrolet pass in front of his vehicle, and he followed them. The two vehicles pulled off to the side of the road, and Deputy Walter pulled in behind them, turning on his flashing red light as he did so. Deputy Walters saw the person next to the Ford pickup turn around and reenter the truck's cab. From his position, Officer Flett saw the driver of the Ford pickup, whom Officer Flett described as a six foot tall white male of slim build wearing a baseball cap. The two vehicles did not wait for Officer Flett but instead drove off.

Sergeant Tillman had seen Rhodenizer's Ford truck leave the Basham residence and was following the Ford truck. Sergeant Tillman was unable to catch up with the driver of the Ford, in part because he was blocked by the sudden detachment of the Ford's camper shell. After losing its camper shell, the Ford truck veered off into the woods. Sheriff J.T. Roberts, exited his vehicle and ran into the woods where he found the Ford crashed into a tree. The Ford's engine was still running, but the driver was gone. Sergeant Tillman joined Sheriff Roberts at the scene.

Sergeant Tillman and Sheriff Roberts searched the interior of the Ford truck's cab. They found a loaded Smith & Wesson .38 caliber revolver and 62.06 grams of methamphetamine. Sheriff Roberts took photographs of the truck cab and the camper shell, including photographs of the drug paraphernalia found in the camper

shell. In addition, Sheriff Roberts recovered from the camper shell a fanny pack (a small bag that can be tied around one's hips), and a brief case that contained photographs, bills, a Social Security card and checkbooks for Jim Schelkle, a.k.a. James Rhodenizer. Sheriff Roberts also testified to finding two custom knives, with bone-like handles, in the truck at the crash site as well as at the tow lot later that evening. However, the knives as well as a few other items were missing when an official inventory of the truck was taken the next morning. Sergeant Tillman also testified to having seen the knives.

At trial, Danny Basham, who is the father-in-law of Rhodenizer as well as the owner of the residence where Rhodenizer's truck and the Chevrolet stopped, testified that he sold a knife or knives to Rhodenizer and that Rhodenizer had entered Basham's residence alone. Also at trial, Basham denied having told Sheriff Roberts that Rhodenizer came to Basham's residence in a brown Ford pick-up with an attached camper and had also left alone in the truck. Sheriff Roberts testified at trial to impeach Basham's denial.

About one month after the driver of the Ford pickup evaded the police, the police learned that on November 22, 1994, Rhodenizer was going to go to the Bank of Dixon in Dixon, Missouri, to cosign for a loan. Police surveilling the bank witnessed a woman park a 1987 white Chrysler in the rear parking lot of the bank. Soon after her arrival, a bank employee told the officers that this woman was the woman for whom Rhodenizer was going to cosign the loan.

The police approached the Chrysler and found Rhodenizer lying in the back seat with his head resting on an open, black bag. Rhodenizer was removed from the Chrysler and searched. The police found on Rhodenizer's person ten .22 caliber bullets, $1,900 in cash, and a plastic bag containing 88.74 grams of marijuana. A later inventory of the black bag revealed that it contained a

loaded .22 caliber revolver resting at the top of the bag.

## II.

Rhodenizer argues that the district court erred when it issued jury instructions because the court refused to define the meaning of the term "carry" as it is used in 18 U.S.C. § 924(c)(1). Rhodenizer's argument is without merit. We have previously held that a district court does not err when it refrains from giving an instruction on the meaning of the term "carry" as it is used in 18 U.S.C. § 924(c)(1). See United States v. Freisinger, 937 F.2d 383, 387 (8th Cir. 1991) ("Even reviewing this issue under the plain error standard, there was simply no error in the district court's failure to give an instruction on the meaning of 'carries.'"). Furthermore, both § 924(c)(1) counts in this case involved a firearm in the passenger compartment of a vehicle that also contained drugs. We have specifically held that to transport a firearm in the passenger compartment of a vehicle loaded with drugs is to carry a firearm within the meaning of 18 U.S.C. § 924(c)(1). See United States v. Willis, 89 F.3d 1371, 1379 (8th Cir.), cert. denied, 117 S. Ct. 273 (1996). With respect to the § 924(c)(1) charge connected to the marijuana count, our analysis is not changed by the fact that the gun was in the top of a bag on which Rhodenizer's head was resting as opposed to loose in the passenger compartment of the vehicle.

## III.

Rhodenizer next argues that the district court abused its discretion when it refused to grant a mistrial after the jury mistakenly saw certain items that the government had earlier agreed would not be admitted into evidence. Specifically, when jury members examined a fanny pack entered into evidence, they inadvertently found some drug paraphernalia that had been mistakenly left in the bag and that the government had previously

agreed would not be admitted into evidence.

The decision to deny a defendant's motion for a mistrial is within the sound discretion of the district court. United States v. Koskela, 86 F.3d 122, 125 (8th Cir. 1996). We will affirm a district court's decision not to grant a mistrial absent an "abuse of discretion resulting in clear prejudice." Id. Even if an error has been committed, the trial court can often avert any undue prejudice by giving a curative instruction. Cf. United States v. Flores, 73 F.3d 826, 831 (8th Cir.) ("[W]e have observed that measures less drastic than declaring a mistrial, for instance giving the jury a curative instruction, ordinarily alleviate any prejudice flowing from improper testimony."), cert. denied, 116 S. Ct. 2568 (1996). Finally, we have noted that a defendant is entitled to a "fair trial, not a perfect one." Id. at 832 (quotations omitted).

The government does not dispute that it was error for the jury to see the drug paraphernalia that was within the fanny pack. See United States v. Bishop, 492 F.2d 1361, 1365 (8th Cir. 1974) (holding that it is error for a jury to examine items that are not entered into evidence). However, this error did not result in clear prejudice. The evidence against Rhodenizer, even without the drug paraphernalia found in the fanny pack, was extremely strong. Moreover, the government had already introduced photographic evidence of drug paraphernalia found in the Ford truck's camper shell. Finally, the district court gave a curative instruction to the jury members admonishing them not to consider any contents of the fanny pack they might have seen. Cf. United States v. Nelson, 984 F.2d 894, 897 (8th Cir. 1993) ("The admission of allegedly prejudicial testimony is ordinarily cured by an instruction to the jury to disregard the testimony."). Thus, the district court did not abuse its discretion when it denied Rhodenizer's motion for a mistrial.

**IV.**

Rhodenizer next argues that the district court erred when it denied his other two motions for a mistrial. One motion for a mistrial was based on his claim that there was insufficient evidence to convict him of possession with intent to distribute methamphetamine. A second motion for a mistrial was based on his claim that there was insufficient evidence to convict him of carrying a firearm during the commission of the crime of possession of methamphetamine with intent to distribute.

When we review a challenge to the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and make all reasonable inferences from the evidence that support the verdict. See United States v. Melina, 101 F.3d 567, 573 (8th Cir. 1996). Thus, "[t]he verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to conclude guilt beyond a reasonable doubt." United States v. Uder, 98 F.3d 1039, 1045 (8th Cir. 1996). Furthermore, the government may rely on circumstantial evidence as well as direct evidence to prove the elements of a crime. See United States v. Brown, 948 F.2d 1076, 1079 (8th Cir. 1991) ("The prosecution may prove essential elements of the crime by direct and circumstantial evidence."); see also United States v. Hankins, 931 F.2d 1256, 1258 (8th Cir. 1991) ("Each element of the crime may be proven by circumstantial as well as direct evidence.").

Viewed in the light most favorable to the guilty verdict, the evidence established that Rhodenizer is guilty of possession of methamphetamine with an intent to distribute. On October 27, 1994, the police saw Rhodenizer enter the Ford truck in which he had been living for at least two weeks and drive it off the campground. The Ford truck was seen stopping at the Basham residence. Danny Basham testified that Rhodenizer had entered his house. Although Basham later denied it at trial, Sheriff Roberts testified that Basham had

-7-

told him that Rhodenizer had arrived on the evening of October 27 in a brown pickup truck with an attached camper and later left in the same vehicle. Finally, the police found 62.06 grams of methamphetamine in the Ford truck, an amount that Sergeant Terry Mills of the Missouri State Highway Patrol testified was more than the amount that would be kept for personal use based on his four and one-half years of investigative experience.

Viewed in the light most favorable to the guilty verdict, the evidence also establishes that Rhodenizer is guilty of carrying a firearm while possessing methamphetamine with an intent to distribute. As discussed above, the evidence establishes his guilt of possession of methamphetamine with an intent to distribute. Furthermore, the Ford truck containing methamphetamine also contained a loaded Smith & Wesson .38. We have repeatedly held that to transport a firearm in the passenger compartment of a vehicle loaded with drugs is to carry a firearm within the meaning of 18 U.S.C. § 924(c)(1). See Freisinger, 937 F.2d at 387; Willis, 89 F.3d at 1379.

**V.**

Rhodenizer next argues that the district court erred when it admitted into evidence (1) a recipe for methamphetamine and (2) photographs that the police had taken of the drug paraphernalia found in the Ford truck's camper shell. The decision whether to admit evidence at trial lies within the sound discretion of the district court, and we will not reverse absent a showing of prejudicial abuse of discretion. See United States v. Nelson, 988 F.2d 798, 805 (8th Cir. 1993) (leaving it to the district court to balance between relevance and prejudice in admitting evidence and reversing only if there is an abuse of discretion). Having reviewed the trial transcript, we are satisfied that the district court did not abuse its discretion when it allowed the recipe and the photographs into evidence.

## VI.

Finally, Rhodenizer argues that he was denied his Sixth Amendment right to legal counsel because of the ineffective assistance of his appointed counsel.  We decline to address Rhodenizer's claim of ineffective assistance of counsel in this direct criminal appeal because such a claim is not cognizable on direct appeal.  "It is settled that ineffective assistance of counsel is more properly raised in a collateral proceeding . . . ."  United States v. Kindle, 925 F.2d 272, 276 (8th Cir. 1991).  Such a claim is more properly raised on collateral review "because, among other reasons, the record [on direct appeal] is often insufficient for us to reach [a] conclusion."  Id.

## VII.

For the reasons discussed above, we affirm.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.