# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2234

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Damon Beaman, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  November 17, 2003

Filed:  March 23, 2004

_____

Before LOKEN, Chief Judge, McMILLIAN and BEAM, Circuit Judges.

_____

LOKEN, Chief Judge.

Damon Beaman was convicted of armed robbery of the Winterset State Bank, a federally insured bank in Kansas City, Missouri, in violation of 18 U.S.C. § 2113(a) and (d).  Beaman appeals, challenging the sufficiency of the evidence to sustain his conviction and arguing that the district court[1] abused its discretion in failing to grant a new trial because of prosecutor misconduct during closing arguments.  We affirm.

_____

[1]The HONORABLE FERNANDO J. GAITAN, United States District Judge for the Western District of Missouri.

# I. Sufficiency of the Evidence

Two men robbed the Winterset Bank on June 15, 2002. Senior Vice President Connie Valentine testified that one robber, wearing a pantyhose mask, leaped over the teller counter, demanded that Valentine open the vault, and struck her in the head when she did not comply. Valentine identified Beaman as the robber, testifying that the bank was well lit, it was a sunny day, and Beaman was about three feet away from her as he entered the bank and jumped over the teller counter. Bank teller LaNora Asbell identified Beaman as the robber who struck her repeatedly in the head as she tried unsuccessfully to unlock the vault. A third bank employee, teller Gabriel Sparks, could not positively identify Beaman but testified that he looked like one of the robbers. The government also introduced the bank surveillance video; blown-up photographs from the surveillance video, which tended to show that the stocking mask failed to hide the robber's facial features; a photo array from which Valentine and Asbell identified Beaman shortly after the robbery; and a photograph of Beaman taken near the time of his arrest. In addition, three witnesses testified that Beaman admitted committing the robbery following his arrest. All three were awaiting sentencing and hoped for a downward departure in exchange for their testimony. Finally, seventeen-year-old Deana Spatholt testified that, the night before the robbery, she overheard Beaman telling his friend, Lee Richmond, "we need to rob a bank."

On appeal, Beaman argues that this evidence was insufficient to convict him of armed robbery because the eyewitness identifications were unreliable; no physical evidence linked him to the robbery; the incriminating testimony of the three witnesses awaiting sentencing was unreliable and discredited on cross examination; Ms. Spatholt initially told police that Beaman was with her in Pittsburg, Kansas, on the day of the robbery; and three defense witnesses corroborated Beaman's testimony that he was in Pittsburg when the Winterset Bank was being robbed. "When considering a challenge to the sufficiency of the evidence used to convict a defendant, we review the evidence in the light most favorable to the verdict, and give the verdict the benefit

of all reasonable inferences which might be drawn from the evidence." United States v. McCarthy, 244 F.3d 998, 999 (8th Cir. 2001). The issue of witness credibility "is virtually unreviewable on appeal because it is preeminently the job of the finder of fact." United States v. Morris, 327 F.3d 760, 761 (8th Cir.) (quotation omitted), cert. denied, 124 S. Ct. 282 and 124 S. Ct. 313 (2003). After careful review of the trial record, we conclude that the evidence viewed most favorably to the verdict would permit a reasonable jury to credit the eyewitness identifications and to find that Beaman was one of the Winterset Bank armed robbers. See United States v. Sadler, 234 F.3d 368, 372 (8th Cir. 2000).

## II. Prosecutor Misconduct Issues

Beaman contends that he is entitled to a new trial because of prosecutor misconduct during closing arguments. The district court enjoys broad discretion in controlling closing arguments. We will overturn a conviction only for a clear abuse of that discretion. See United States v. Cannon, 88 F.3d 1495, 1502 (8th Cir. 1996).

At trial, Beaman objected to only one of the instances of alleged misconduct that he challenges on appeal. He nonetheless argues that we should review all the misconduct claims under the same standard of review, citing the following passage in our opinion in United States v. Freisinger: "because improper closing remarks are reversible only if they are so prejudicial as to deprive the defendant of a fair trial, there is no difference between improper remarks which require reversal where an objection to the remarks has been preserved and remarks which constitute plain error." 937 F.2d 383, 387 (8th Cir. 1991). However, that passage was overruled by the Supreme Court's subsequent decision in United States v. Olano, where the Court held that, if there was no timely objection at trial, an appellate court must determine that an error is "plain," that is, clear or obvious, *before* the court may consider whether it was sufficiently prejudicial to warrant reversal. 507 U.S. 725, 734 (1993). Olano governs our plain error review. We will first discuss the claim of misconduct

that was properly preserved by a contemporaneous objection at trial and then turn to plain error review of the others.  All are without merit.

**A.**  Near the end of his rebuttal argument, the prosecutor argued:

This case boils down to LaNora Asbell and Connie Valentine.  [Defense counsel] infers -- appears to say that they want to convict somebody so bad that they would come in here and identify this man because they want somebody, they want to get back at . . . somebody who did this. Now, members of the jury, you saw those two nice ladies in here.  Do you really believe that those two would falsely accuse somebody of a crime of this magnitude and this seriousness unless they were absolutely certain?

[DEFENSE COUNSEL]:  Object, I'm going to object to that.

THE COURT:  Objection is overruled.

On appeal, Beaman argues that this constituted improper vouching and a prejudicial attempt "to turn the jury deliberations into a moral rather than a factual exercise."  We disagree.  The argument properly addressed the credibility of crucial witnesses.  Suggesting that the jurors "saw those two nice ladies in here" was a reference to "the manner of the witness while testifying," a factor the district court properly instructed the jury to consider in weighing witness credibility.  Calling government witnesses "nice ladies" is not the equivalent of calling defendants "bad people," a type of argument we condemned in Cannon, 88 F.3d at 1502.  Moreover, this rebuttal was a fair reply to defense counsel's closing argument in which counsel suggested that Asbell and Valentine were crime victims who "want closure [and are] focusing their anger and their blame on Damon Beaman because of a skewed, lopsided photo lineup."   "An advocate is permitted considerable latitude in responding to his opponent's arguments . . . ."  United States v. Schwartz, 655 F.2d

140, 142 (8th Cir. 1981). The district court did not abuse its discretion in overruling Beaman's objection to this portion of the prosecutor's rebuttal.

**B.**    Beaman argues that the prosecutor repeatedly engaged in improper vouching by using the phrase, "I submit to you," when referring to testimony and other trial evidence. Improper vouching occurs when a prosecutor refers to facts outside the record, implies that the witness's testimony is supported by facts not available to the jury, gives an implied guarantee of truthfulness, or expresses a personal opinion regarding witness credibility. United States v. Benitez-Meraz, 161 F.3d 1163, 1167 (8th Cir. 1998). Beaman did not object to this phrasing at trial, and the district court did not correct or criticize it *sua sponte*. Use of the phrase, "I submit to you," is a questionable practice because, depending on the context, it may either properly suggest how the jury should view the trial evidence, or improperly suggest that the government knows more than the jury has heard. See United States v. White, 241 F.3d 1015, 1023 (8th Cir. 2001); Freisinger, 937 F.2d at 386-87. Here, in the course of closing arguments that properly focused on the trial evidence, the prosecutor used the phrase "I submit" eighteen times, while defense counsel used the phrase seven times. In these circumstances, there was no plain error. See United States v. Eltayib, 88 F.3d 157, 173 (2d Cir.), cert. denied, 519 U.S. 1045 (1996); United States v. Jackson, 915 F.2d 359, 361 (8th Cir. 1990).

**C.** Beaman argues that the prosecutor went beyond the evidence by arguing that Spatholt initially lied to the police "[b]ecause Lee Richmond told her to do that. She was afraid of him." Defense counsel objected that Spatholt did not testify to that. The court ruled that the prosecutor "can make an argument that that was why she did it, but you can't say that she said that, because she didn't." We agree with the ruling. The prosecutor complied with that ruling and thus did no more "than argue permissible inferences from the evidence." United States v. Beckman, 222 F.3d 512, 527 (8th Cir. 2000); see United States v. Karam, 37 F.3d 1280, 1289 (8th Cir. 1994), cert. denied, 513 U.S. 1156 (1995). Beaman also objects to the prosecutor's

suggestion during rebuttal that Beaman put on weight while in prison to change his appearance for trial. But that, too, was a fair inference from the evidence and a fair reply to defense counsel's argument that Beaman was too heavy to be the robber in the surveillance video.

**D.** Beaman argues that the prosecutor committed misconduct during rebuttal when he held up the six-person photo lineup exhibit and said that the bank employees had a "one in six chance" of correctly identifying the robber, because this falsely assumed that the robber was necessarily in the photo array. This contention borders on the frivolous. The rebuttal was in response to defense counsel's argument that the identification of Beaman by Asbell and Valentine was unreliable because the five others in the photo array did not resemble Beaman. While it is true that the robber might not have been in the array at all, that theoretical possibility was totally unrelated to the context in which the argument was made. Thus, there was no plain error when the court did not *sua sponte* point out and correct this irrelevant detail.

**E.** Beaman argues that the prosecutor improperly vouched for Spatholt's credibility when he argued:

> Now, if there was also some sort of suggestion that I would threaten or the FBI and all of us would threaten [Spatholt] with prosecution to get her to change her story and perjure herself in front of you, that's ludicrous. I'm not going to risk my career over that.

This rebuttal responded to defense counsel's argument that Spatholt "only changed her story when she was threatened with prosecution and granted immunity." While the prosecutor's remark might well have been improper if unprovoked, "[w]here the prosecutor, his witnesses, or the work of government agents is attacked, the District Attorney is entitled to make a fair response and rebuttal." United States v. Lee, 743

F.2d 1240, 1253 (8th Cir. 1984). There was no plain error. <u>See</u> <u>United States v. Young</u>, 470 U.S. 1, 16-18 (1985).

The judgment of the district court is affirmed.

_____