# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2765

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Howard Dale Morris, | * |
| | * |
| Defendant - Appellant. | * |

_____

No. 02-2767

_____

Appeals from the United States
District Court for the
Western District of Missouri.

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * |
| v. | * |
| | * |
| Charles Jacob Davis, also known as | * |
| Charlie Parker, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: January 16, 2003

Filed: April 30, 2003

_____

Before LOKEN[*] and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
       WEBBER,[**] District Judge.
                        _____

LOKEN, Chief Judge.

       Howard Dale Morris and Charles Jacob Davis appeal their convictions of
conspiring to manufacture and distribute five hundred grams or more of
methamphetamine, in violation of 21 U.S.C. §§ 841 and 846. On appeal, Davis
argues that the government's evidence was insufficient to support his conspiracy
conviction. Morris argues that the district court[1] abused its discretion when it
excluded the plea agreements of two government witnesses. We affirm.

       **Davis.** Gwendolyn Hopkins was an important government witness in the
multi-defendant trial. Hopkins testified that she began selling methamphetamine for
Morris in June of 1998. Through Morris, Hopkins met Warren Barton and eventually
became Barton's girlfriend. Hopkins testified that on a trip to California with Barton
in February 2001, she saw Barton take cash into the back room of Davis's residence
and return with a large quantity of methamphetamine. Hopkins testified that she and
Barton returned to Davis's residence on March 13, 2001, where she saw Barton
purchase $11,500 worth of methamphetamine from Davis. Agents watched Barton
visit the home; Barton and Hopkins were arrested in possession of methamphetamine
the following day. On cross-examination, Hopkins admitted that her trial testimony
was inconsistent with information she gave at the time of her arrest and with the first

---

       [*]The Honorable James B. Loken became Chief Judge of the United States
Court of Appeals for the Eighth Circuit on April 1, 2003.

       [**]The HONORABLE E. RICHARD WEBBER, United States District Judge for
the Eastern District of Missouri, sitting by designation.

       [1]The HONORABLE SCOTT O. WRIGHT, United States District Judge for the
Western District of Missouri.

proffer she made to the government prior to her guilty plea. She also acknowledged that she never saw methamphetamine change hands between Davis and Barton.

Though acknowledging we must view the trial evidence in the light most favorable to the government, Davis argues that a reasonable fact-finder could not believe Hopkins's self-serving, inconsistent, and largely uncorroborated testimony, and that the government's other evidence proved at most that he was a methamphetamine user. But the issue of Hopkins's credibility is virtually unreviewable on appeal because it is "preeminently the job of the finder of fact." United States v. E.R.B., 86 F.3d 129, 130 (8th Cir. 1996). The jury clearly credited her testimony, and our review of that testimony and the corroborating testimony of numerous other witnesses gives us no reason to doubt the jury's credibility determination. Accordingly, the evidence was sufficient to convict Davis of methamphetamine conspiracy. See United States v. Pena, 67 F.3d 153, 155 (8th Cir. 1995) (sufficiency standard of review).

**Morris.** Morris argues the district court abused its discretion in refusing to admit the written plea agreements of Hopkins and Larry Youngblood, another government witness. "In this circuit, a confederate's guilty plea or plea agreement is admissible on the government's direct examination of the witness as evidence of the witness' credibility or of his acknowledgement of participation in the offense." United States v. Drews, 877 F.2d 10, 12 (8th Cir. 1989). Morris urges the converse proposition: that a plea agreement may also be offered into evidence by the defense to cast doubt on a witness's credibility. He argues that excluding the plea agreements limited his ability to demonstrate to the jury that the testimony of Hopkins and Youngblood should not be believed because of "the inherent coercive effect" of the cooperation provisions in their agreements.

This is an issue committed to the district court's discretion. See Drews, 877 F.2d at 12. Here, the district court initially overruled the government's objection to

the admission of Hopkins's plea agreement into evidence, but then sustained the objection of another defendant who sought to have the agreement excluded. The plea agreements contained information that might have implicated one defendant, and sentencing calculations that the jury might have taken as substantive evidence of the defendants' guilt. The court permitted thorough cross-examination of both Hopkins and Youngblood as to the details of their agreements to cooperate. Both readily admitted they had entered into plea agreements and hoped to receive favorable sentencing recommendations for their cooperation. In these circumstances, the district court did not abuse its discretion by concluding that any additional probative value of the written plea agreements was "substantially outweighed by the danger of unfair prejudice," that is, an "undue tendency to suggest decision on an improper basis." FED. R. EVID. 403 & advisory committee's note.

The judgments of the district court are affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.