# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-1839

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Michael W. Johnson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 29, 2004
Filed:  August 17, 2005

_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Michael W. Johnson appeals his conviction of two counts of being a felon in possession of firearms in violation of 18 U.S.C. § 922(g), one count of possessing a stolen firearm in violation of 18 U.S.C. § 922(j) and one count of misdemeanor possession of methamphetamine in violation of 21 U.S.C. § 844(a).  Johnson contends that the evidence was insufficient to support the jury's finding that he

possessed the firearms or methamphetamine. He also contends that the district court[1] erred in sentencing him pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4 when it determined that his prior Missouri conviction for tampering in the first degree constituted a violent felony. We affirm Johnson's conviction and the sentence imposed by the district court.

## I.  BACKGROUND

The events of April 29, 2003 form the basis for three of the four counts of conviction. On that day, David Prine discovered that Johnson had stolen a riding lawnmower and three firearms from his residence. Prine proceeded to the Johnson trailer, where he confronted Johnson and accused him of theft. In response, Johnson produced one of the firearms, a .22 magnum caliber rifle. Johnson told Prine that the other firearm was taken by Bo Turley. The third firearm, a double-barreled shotgun, was surreptitiously returned to the Prine residence prior to Johnson's arrest.

The same day, a confidential informant informed the Douglas County, Missouri Sheriff's Department that Johnson was in possession of stolen firearms. Based on information provided by Prine as well as that of the confidential informant, a search warrant was obtained and executed at the Johnson trailer. Although the deputies were unable to locate the remaining stolen firearms, they discovered a variety of ammunition and three small plastic bags containing methamphetamine.

During the resulting investigation, law enforcement discovered Johnson's prior arrest for the January 2002 shootings at the residence of Danny and Mavis Harris in Ava, Missouri. According to evidence admitted at trial, Johnson twice fired a .30-06 deer rifle at the Harris residence in order to exact revenge for an early altercation with

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

the Harrises' sons. Johnson was charged in state court with two counts of unlawful use of a weapon arising out of the shootings. The state charges were ultimately dismissed after Johnson was charged by federal authorities in the instant matter.

On July 8, 2003, a federal grand jury issued a four-count indictment against Johnson. Count one of the indictment, being a felon in possession of a firearm, stemmed from Johnson's firing of the .30-06 deer rifle at the Harris residence. In count two, Johnson was charged with being a felon in possession of the .22 magnum caliber rifle, .22 caliber bullets, 9mm bullets and .30-30 caliber bullets. His possession of the .22 magnum caliber rifle also gave rise to count three, being in possession of a stolen firearm. Finally, count four of the indictment charged Johnson with misdemeanor possession of methamphetamine. Johnson proceeded to trial, where the Government produced numerous witnesses and substantial physical evidence. A jury found Johnson guilty of all four counts.

At sentencing, the district court found that Johnson qualified for the armed career criminal enhancements in § 924(e) and § 4B1.4 based on his three previous convictions for burglary in the second degree, robbery in the second degree and tampering in the first degree. Because the district court found that Johnson's conviction for illegally possessing the .30-06 deer rifle occurred in connection with a crime of violence–the shootings at the Harris residence–the district court applied § 4B1.4(b)(3)(A) and found that Johnson's total offense level was 34. With a Criminal History Category of VI, this produced a guidelines range of 262 to 327 months. Johnson was sentenced to 262 months' imprisonment and five years' supervised release. He filed a timely notice of appeal.

## II.    DISCUSSION

### A.    Sufficiency of the Evidence

Johnson challenges the sufficiency of the evidence to convict him of possessing the two firearms identified in counts one through three. *See United States v. Anderson*, 78 F.3d 420, 422 (8th Cir. 1996) (setting forth the elements of the offense of being a felon in possession of a firearm in violation of § 922(g)); *see also United States v. Iron Eyes*, 367 F.3d 781, 784 (8th Cir. 2004) (listing possession of a firearm as an element of possession of a stolen firearm in violation of § 922(j)).  "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict."  *United States v. Parker*, 364 F.3d 934, 943 (8th Cir. 2004) (quoting *United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003)) (internal quotations omitted).  We will uphold the jury verdict if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.  *Id.*  The standard of review, therefore, is a strict one, and we will abide by the jury's verdict unless we conclude that a reasonable jury could not have found all the elements of the offense beyond a reasonable doubt.  *Id.*

With respect to the first count of conviction, Johnson argues that the lack of direct evidence of his actual possession of the .30-06 deer rifle belies the jury's finding that he possessed the firearm used in the shootings at the Harris residence. After a careful review of the trial record, we find that there was substantial evidence upon which a reasonable jury could find Johnson knowingly possessed the .30-06 deer rifle. Multiple witnesses provided substantial direct and circumstantial evidence of Johnson's possession of the .30-06 deer rifle.  For example, Jennifer Hayes testified that she saw Johnson in possession of the .30-06 deer rifle on the night of the shootings.  Witness testimony also established how and when Johnson came into

possession of the .30-06 deer rifle and verified its identity after he attempted to dispose of the firearm.

Similarly, Johnson challenges his convictions based on his possession of the stolen .22 magnum caliber rifle. He argues that the eyewitness testimony of David Prine should be discounted because of the animosity between Prine and himself. The issue of a witness's credibility is "virtually unreviewable on appeal because it is preeminently the job of the finder of fact." *United States v. Beaman*, 361 F.3d 1061, 1064 (8th Cir. 2004) (quoting *United States v. Morris*, 327 F.3d 760, 761 (8th Cir. 2003), *cert. denied*, 540 U.S. 908 *and* 540 U.S. 920 (2003)). Prine's testimony was corroborated by incriminating statements made by Johnson to Prine's mother and to the confidential informant. Similarly, the collection of ammunition found in Johnson's trailer was sufficient to prove constructive possession of ammunition in violation of § 922(g)(1). *See United States v. Maxwell*, 363 F.3d 815, 818 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 1293 (2005) ("Constructive possession of the firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself."). Witness testimony, coupled with law enforcement's discovery of ammunition at Johnson's trailer, provided substantial evidence upon which a reasonable jury could find Johnson illegally possessed the stolen .22 magnum caliber rifle and assorted ammunition.

Finally, Johnson asserts that there was insufficient evidence to establish his possession of the methamphetamine found during the execution of the search warrant. The Government put into evidence the three small plastic bags of methamphetamine found in Johnson's trailer. The Government also offered substantial witness testimony establishing Johnson's control and ownership over the trailer in which the drugs were found. *See United States v. Campa-Fabela*, 210 F.3d 837, 839 (8th Cir. 2000) ("Constructive possession of drugs can be established if a person has ownership, dominion or control over the contraband itself, or dominion over the

premises in which the contraband is concealed.") (citations omitted). Viewing the evidence in a light most favorable to the Government and giving the Government the benefit of all reasonable inferences, it is not difficult to conclude that a reasonable jury could have found Johnson guilty of the misdemeanor offense of possession methamphetamine.

### B.     Armed Career Criminal Enhancement

Johnson also asserts that the district court erred when it found that he had committed three previous violent felonies requiring imposition of a statutory mandatory minimum sentence under § 924(e) and a sentencing guidelines enhancement under § 4B1.4(b)(3)(A).[2] Specifically, Johnson argues that tampering in the first degree in violation of Mo. Rev. Stat. § 569.080.1(2) does not constitute a violent felony for purposes of § 924(e).

We review de novo the legal question of whether a prior conviction constitutes a violent felony under § 924(e). *See United States v. Griffith*, 301 F.3d 880, 884 (8th Cir. 2002); *see also United States v. Sumlin*, 147 F.3d 763, 765 (8th Cir. 1998) ("We review the question of whether a prior offense constitutes a violent felony de novo."). Factual findings are reviewed for clear error. *United States v. Sun Bear*, 307 F.3d 747, 750 (8th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003).

---

[2]Although he broadly objected to the district court's application of the § 4B1.4(b)(3)(A) enhancement, Johnson does not challenge on appeal the district court's finding that he possessed the firearm in connection with a crime of violence as defined in § 4B1.2(a). In other words, Johnson does not challenge on appeal the district court's finding that he used the .30-06 deer rifle in connection with the shootings at the Harris residence and that this activity constituted the crime of violence of unlawful use of a weapon. *See* Fed. R. App. P. 28(a)(5), (a)(9); *see also United States v. Gonzales*, 90 F.3d 1363, 1369-70 (8th Cir. 1996) (refusing to consider issues that are deemed abandoned on appeal).

The Armed Career Criminal Act ("ACCA") requires a statutory minimum sentence of 15 years' imprisonment where a defendant convicted of a violation of § 922(g) has three prior "violent felony" convictions. *See* 18 U.S.C. § 924(e).[3] An armed career criminal is also subject to sentencing guidelines enhancements under § 4B1.4. The guidelines specify an offense level of 34 if the armed career criminal used or possessed the firearm in connection with a "crime of violence." U.S. SENTENCING GUIDELINES MANUAL § 4B1.4(b)(3)(A). For purposes of § 4B1.4, the term "crime of violence" is defined in § 4B1.2(a).[4] The statutory definition of

---

[3]Section 924(e) defines "violent felony" as:

[A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

18 U.S.C. § 924(e)(2)(B) (emphasis added).

[4]Section 4B1.2(a) defines a "crime of violence" as:

[A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

U.S.S.G. § 4B1.2(a) (emphasis added). As the dissent correctly notes, the definitions of "violent felony" and "crime of violence" under § 924(e) and § 4B1.2(a),

"violent felony" is viewed as interchangeable with the guidelines definition of "crime of violence." *United States v. Johnson*, 326 F.3d 934, 936 (8th Cir. 2003) ("The definitions of 'violent felony' and 'crime of violence' are almost identical[.]"). Therefore, in determining whether a defendant qualifies as an armed career criminal under the ACCA, we are also bound by case law defining a crime of violence under § 4B1.2. *United States v. Sprouse*, 394 F.3d 578, 580 (8th Cir. 2005) ("Because the definitions of crime of violence and violent felony are identical, the same analysis applies in determining whether [a defendant's] convictions fall within the [ACCA]".).

In June 1998, the State of Missouri filed an amended information charging Johnson as a persistent offender with tampering in the first degree by knowingly and unlawfully operating a 1970 Ford F-350 dump truck without the consent of the owner in violation of Mo. Rev. Stat. § 569.080.1(2). After Johnson entered a plea of guilty,

---

respectively, are not the same as the definition of "crime of violence" under 18 U.S.C. § 16(b). *See also Leocal v. Ashcroft*, 125 S. Ct. 377, 383 (2004) (noting that "the 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct" as in § 924(e)(ii) and § 4B1.2(a)(2)). The dissent argues, however, that our application of § 924(e) and § 4B1.2(a) should be guided by the ordinary meaning of "crime of violence" and by the reasoning of *Leocal*. We believe that in applying § 924(e) and § 4B1.2(a), we need look no further than the plain language of the definitions provided by Congress and the Sentencing Commission. *See Turchick v. United States*, 561 F.2d 719, 724 (8th Cir. 1977) ("[S]ince the statute provides no definition, we look to the word's common or ordinary meaning."); *see also United States v. Vig*, 167 F.3d 443, 447 (8th Cir. 1999) (looking to the ordinary meaning of a word because the statute does not provide a specific definition). Further, we note that application of *Leocal* to § 924(e) and § 4B1.2(a) has been rejected by several panels of this Court. *See United States v. Hudson*, No. 04-3109, slip op. at 7-8 (8th Cir. July 15, 2005) ("We believe that the differing texts of § 16(b) and § 924(e) demonstrate that the analysis in *Griffith* properly focused on the possible effect of the conduct of a person who commits theft from a person.") ; *United States v. Scott*, 413 F.3d 839, No. 05-1174, slip op. at 2 (8th Cir. July 13, 2005) (noting that "*Leocal* is . . . entirely inapposite" to whether automobile theft is a crime of violence under § 4B1.2(a)(2)); *United States v. Barbour*, 395 F.3d 826, 827-28 (8th Cir. 2005).

the Circuit Court of Jackson County, Missouri sentenced Johnson to five years' imprisonment, but suspended the sentence pending a three-year period of probation. Johnson argues that this conviction is not a violent felony under § 924(e)(2)(B). We disagree.

The Supreme Court has held that the determination of whether an offense is a violent felony requires a "categorical approach." *Taylor v. United States*, 495 U.S. 575, 602 (1990). When a sentencing court uses this categorical approach, it may look beyond the fact of conviction and the statutory definition of the offense to such sources as "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 125 S. Ct. 1254, 1263 (2005). Consequently, in determining whether the tampering charge qualifies as a violent felony, we can look to the charging document, which tells us that Johnson was convicted of knowingly operating a Ford F-350 dump truck without the consent of the owner.

We conclude that the Missouri offense of "tampering by unlawful operation," much like automobile theft, is a discrete offense which qualifies as a violent felony under § 942(e)(2)(B)(ii). In *Sun Bear*, we held that the Utah offense of attempted automobile theft is a crime of violence for purposes of U.S.S.G. § 4B1.1 because the attendant conduct and circumstances create a serious potential risk of physical injury to another. *Sun Bear*, 307 F.3d at 752-53. We subsequently applied the reasoning of *Sun Bear* to conclude that the Missouri offense of automobile theft is a violent felony for purposes of § 924(e)(2)(B)(ii) because it presents the same serious potential risk of physical injury to another. *Sprouse*, 394 F.3d at 580-81. The Missouri offenses of "tampering by operation" and "automobile theft" differ only with respect to the permanence of the offender's intent to deprive the owner of

possession.  *Compare* Mo. Rev. Stat. § 569.080.1(2) *with* Mo. Rev. Stat. § 570.030.1.[5]

The close connection between the Missouri offense of tampering in the first degree and automobile theft is well-recognized in Missouri and Eighth Circuit case law.  In *Peiffer v. State*, 88 S.W.3d 439 (Mo. banc 2002) (per curiam), the Missouri Supreme Court held that the double jeopardy clause of the Fifth Amendment barred a prosecution for automobile theft when a defendant already had a conviction for tampering by possession.  *Id.* at 443-44 (adopting the Eighth Circuit's rationale in *McIntyre v. Caspari*, 35 F.3d 338, 344 (8th Cir. 1994), that, under Missouri law, first-degree tampering is a lesser-included offense of stealing).  The *Peiffer* court reasoned that tampering by possession is a lesser-included offense of automobile theft because prosecution for automobile theft requires only the additional proof that the defendant's possession of the automobile be accompanied *with the purpose to deprive* the owner of possession.  *Id.* at 444 (employing the "same elements" test found in

---

[5]The Missouri offense of tampering in the first degree is defined as:

A person commits the crime of tampering in the first degree if
. . .
> (2) He knowingly receives, possesses, sells, alters, defaces, destroys or unlawfully operates an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle without the consent of the owner thereof.

Mo.Rev.Stat. § 569.080.1(2).

The Missouri offense of stealing is defined as:

A person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion.

Mo.Rev.Stat. § 570.030.1.

*Blockburger v. United States*, 284 U.S. 299, 304 (1932) and codified in Mo. Rev. Stat. § 556.046.1(1)).

We believe the close connection between tampering and automobile theft is particularly strong where the illegal tampering is committed by operation.[6] Tampering by possession, the offense analyzed in *Peiffer*, differs from tampering by operation in that the former offense merely requires a defendant to enter an automobile in a manner consistent with possession while the latter offense requires a defendant to start the automobile's engine.[7] *See State v. Barnett*, 767 S.W.2d 38, 41 (Mo. banc 1989) ("The associated word 'operates' [in Mo.Rev.Stat. § 569.080.1(2)] makes it clear a person does not have to operate or drive the [automobile] to possess it."). Put differently, a person may possess an automobile without operating it, but to operate an automobile generally requires possession of the automobile. Viewed in this way, we believe tampering by operation represents an escalated, and more dangerous, form of tampering by possession. *Id.* (upholding conviction of tampering by possession where the defendant entered a vehicle and attempted to start it). Given the substantial similarity between the Missouri offenses of automobile theft and tampering by operation, we are guided by our case law concluding that automobile theft "involves conduct that presents a serious potential

---

[6]We have been willing to identify specific categories of a general statute as violent felonies where other categories under that same statute might not qualify as violent felonies under § 924(e). *See, e.g., Sun Bear*, 307 F.3d at 752 (recognizing "automobile theft" as a crime of violence under Utah's general "theft" statute); *Griffith*, 301 F.3d at 885 (holding that "theft from a person" is a crime of violence under Iowa's general "theft" statute).

[7]Under Missouri law, a person operates a vehicle when he causes its motor to function. *Cox v. Director of Revenue*, 98 S.W.3d 548, 550 (Mo. banc 2003) (ascertaining the legislature's intent employing the plain and ordinary meaning of "operate" as found in *Webster's Third New International Dictionary*). Contrary to Johnson's assertion, tampering by operation, which essentially represents an escalated form of tampering by possession, implicates the same concerns as *Sun Bear*.

risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). *See, e.g, Sun Bear*, 307 F.3d at 751-53 (holding that attempted automobile theft is a crime of violence); *see also United States v. Barbour*, 395 F.3d 826, 827-28 (8th Cir. 2005) (relying on Eighth Circuit precedent to find that automobile theft under Kansas law constitutes a violent felony); *Sprouse*, 394 F.3d at 580-81 (relying on *Sun Bear* to conclude that automobile theft under Missouri law is a violent felony).

In determining whether tampering by operation involves a serious potential risk of physical injury to another, *Sun Bear* and *Sprouse* teach that we must take a common sense approach in evaluating the risks created by, and the likely consequences in the commission of, the crime. *Sprouse*, 394 F.3d at 580-81; *Sun Bear*, 307 F.3d at 752-53. Conduct accompanying automobile theft or attempted automobile theft creates the risk of a violent confrontation with the vehicle's owner or with law enforcement, places the criminal in control of a potentially deadly or dangerous weapon, in this case an F-350 dump truck, and makes it likely that "the thief may be pursued, or perceive a threat of pursuit, and drive recklessly, turning any pursuit into a high-speed chase with potential harm to innocent people, to the police, and to the thief himself." *Id.* The offense of tampering by operation carries the same serious potential risks of injury to others that are identified with automobile theft in *Sun Bear* and *Sprouse*. Based both on the close connection between the Missouri offenses of tampering by operation and automobile theft and on our binding precedent, we reach the ineluctable conclusion that the risks associated with tampering by operation are sufficient to warrant classifying it as a violent felony.

## C.    Sentencing

Prior to oral arguments, Johnson requested leave to file supplemental briefs in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004). We held the motion in abeyance pending *United States v. Booker*, 125 S. Ct. 738 (2005). We now take this motion with the case. In light of *Booker* and our recent decision in *United States v.*

*Pirani*, 406 F.3d 543 (8th Cir. 2005), we deny the motion because Johnson cannot carry his burden of showing prejudice necessary to be entitled to plain-error relief.

While Johnson objected to the district court's finding that tampering by operation qualified as a violent felony under § 924(e), he did not object to his sentence on the basis of *Apprendi*, *Blakely*, or the constitutionality of the federal sentencing guidelines. See *Pirani*, 406 F.3d at 549. As a result, Johnson is only entitled to plain-error review. *Id.*

We apply the plain-error test set forth in *United States v. Olano*, 507 U.S. 725, 732-36 (1993). The test has been stated as follows:

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Pirani*, 406 F.3d at 550 (quoting *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

As in *Pirani*, the first two factors are satisfied because the district court committed error in applying the guidelines in a mandatory fashion, and the error is plain at the time of appellate review. *See Pirani*, 406 F.3d at 550. To satisfy the third *Olano* factor, Johnson must prove by a preponderance of the evidence that there exists "a reasonable probability that he would have received a more favorable sentence with the *Booker* error eliminated by making the Guidelines advisory." *Id.* at 551.

We conclude that Johnson cannot demonstrate a reasonable probability that the district court would have imposed a more favorable sentence under an advisory guidelines system. After reviewing Johnson's extensive history of violent crime and drug use, the district court declared, "You have led a horrible life. You have led a life of crime, a life that exhibited no respect for other people or their property." His three convictions for violent felonies warranted a 15-year statutory minimum sentence under the ACCA. Based on a Criminal History Category of VI and a total offense level of 34, the district court sentenced Johnson at the bottom of the applicable guideline range of 262 to 327 months.

A sentence at the bottom of the guideline range "is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the *Booker* error." *Id.* at 553. Indeed, according to the district court "a sentence of 262 months is sufficient punishment." There is nothing else in the record, particularly in light of the district court's condemnatory language, to indicate that the district court would, under an advisory guidelines system, impose a sentence of less than 262 months. "[W]here the effect of the error on the result in the district court is uncertain or indeterminate–where we would have to speculate–the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." *Id.* (quoting *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005)).

We conclude, therefore, that Johnson cannot prove by a preponderance of the evidence that the district court's error in imposing a sentence under a mandatory guidelines system affected a substantial right. Because Johnson fails to demonstrate that there exists a reasonable probability that he would receive a more favorable sentence under an advisory guidelines system, we need not proceed to the fourth factor of the plain-error test, "whether to exercise our discretion to review a plain error because it 'seriously affects the fairness, integrity, or public reputation of

judicial proceedings.'" *Id*. (quoting *Johnson*, 520 U.S. at 467). Consequently, Johnson's sentence does not warrant remand under *Booker*.

## III.    CONCLUSION

Substantial evidence supports Johnson's convictions for being a felon in possession of firearms and for possessing methamphetamine. Further, the district court properly found Johnson to be an armed career criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4(b)(3)(A) because the Missouri offense of tampering by operation is a violent felony under § 924(e)(2)(B)(ii). Finally, Johnson cannot demonstrate that his sentence imposed under a mandatory sentencing guidelines system constitutes plain error warranting remand under *Booker*. Accordingly, Johnson's conviction and sentence are affirmed.

BYE, Circuit Judge, concurring in part, dissenting in part.

I respectfully dissent from the majority's holding that the Missouri offense of tampering by operation is a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii).

Based on the "close connection" between the Missouri offenses of tampering in the first degree and vehicle theft, the majority concludes tampering by operation carries the same serious potential risk of injury to others as those identified for the Missouri offense of vehicle theft in *United States v. Sprouse*, 394 F.3d 578, 580-81 (8th Cir. 2005), in which the court adopted the reasoning in *United States v. Sun Bear*, 307 F.3d 747, 752-53 (8th Cir. 2002).[8] In describing the serious potential risks of injury associated with attempted vehicle theft, the court in *Sun Bear* hypothesizes

---

[8]I note my agreement with the views expressed by the concurrence in *Sprouse,* 394 F.3d at 581-82 (Lay, J., concurring), and the dissent in *Sun Bear*, 307 F.3d at 753-56 (Melloy, J., dissenting), that the description in *Sun Bear* does not describe the likely consequences in a case of simple vehicle theft.

a scenario in which the thief, while appropriating a vehicle, encounters the returning driver or a passerby, which leads to the possibility of a violent confrontation. *Id.* The thief, feeling the stress and urgency of the situation, recklessly drives away in the vehicle, either because he perceives a threat of pursuit or because there is an actual pursuit, which then leads to the potential for a high-speed chase. *Id.* at 753.

To establish the offense of tampering by operation under Missouri law, the State needs to establish only that the "'defendant knew he was operating the car without the consent of the owner.'" *State v. Presberry*, 128 S.W.3d 80, 96 (Mo. Ct. App. 2003) (quoting *State v. McIntyre*, 735 S.W.2d 111, 112 (Mo. Ct. App. 1987)). The commission of the offense of tampering by operation does not necessarily involve a defendant who appropriates a vehicle directly from the owner. Instead, the defendant in a tampering case is often a subsequent transferee of a vehicle that has been reported stolen. *See* 32 Mo. Prac. Series, Missouri Criminal Law § 35.1 (describing typical tampering in the first degree offense in Missouri). As such, the commission of the offense of tampering by operation often occurs when law enforcement spots the defendant driving a vehicle that has been reported stolen and apprehends the defendant. *See, e.g.*, *State v. Martin*, 882 S.W.2d 768, 769-70 (Mo. Ct. App. 1994). Thus, a violent confrontation at the point of appropriation of the vehicle and a recklessly absconding defendant are not serious potential risks of the commission of the offense of tampering by operation. Certainly, there is always the possibility that a defendant, who knows he is driving a vehicle without the owner's consent and is ordered by the police to pull over, may decide to get away from the police rather than pull over. *See, e.g.*, *State v. Hinkle*, 987 S.W.2d 11, 12 (Mo. Ct. App. 1999). But that is a possible risk whenever law enforcement attempts to stop a vehicle driven by a defendant who fears detection of any unlawful activity.

Furthermore, in *Leocal v. Ashcroft*, 125 S. Ct. 377, 383 (2004), the Supreme Court, in analyzing the term "crime of violence" under 18 U.S.C. § 16, advised that in analyzing statutory terms we should not forget the term we are ultimately

construing, which in *Leocal* was the term "crime of violence," *id.* at 383, and in the instant case is the term "violent felony." The Supreme Court in *Leocal* considered both the "ordinary meaning" of the term "crime of violence" and the definition provided in 18 U.S.C. § 16(b) before concluding 18 U.S.C. § 16(b) does not include DUI offenses. *Leocal*, 125 S. Ct. at 383 (citing *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992) (Breyer, C.J.) ("observing that the term 'violent felony' in 18 U.S.C. § 924(e) (2000 ed. and Supp. II) 'calls to mind a tradition of crimes that involve the possibility of more closely related, active violence.'")). The statutory definition of "crime of violence" under 18 U.S.C. § 16(b) is not the same as the statutory definition of "violent felony" under 18 U.S.C. § 924(e). However, the Supreme Court's pronouncement in *Leocal* which we should keep in mind as the ultimate term we are construing is not limited to only 18 U.S.C. § 16(b). This is demonstrated by the *Leocal* Court's citation to *Doe*, in which the First Circuit examined whether the offense of being a felon in possession of a firearm is a "violent felony" under 18 U.S.C. § 924(e). In my view, the offense of knowingly operating a vehicle without the owner's consent does not fall within the "ordinary meaning" of the term "violent felony," which "calls to mind a tradition of crimes that involve the possibility of more closely related, active violence." *Doe*, 960 F.2d at 225.

I join in affirming the convictions. I also agree Johnson failed to establish *Booker* plain error. I dissent from the court's holding of tampering by operation as being a violent felony under 18 U.S.C. § 924(e)(2)(B)(ii). Accordingly, I would affirm the convictions, however, vacate the sentence and remand for resentencing.

_____