Justice Scalia,
with whom
Justice Stevens and Justice Ginsburg join, dissenting.
I disagree with the Court’s basic approach in this case, and must therefore lay out my own.
I
As the Court acknowledges, ante, at 197, the only way attempted burglary can qualify as a violent felony under the Armed Career Criminal Act (ACCA) is by falling within the “residual provision” of clause (ii) — that is, if it is a crime that “otherwise involves conduct that presents a serious potential risk of physical injury to another.” 18 U. S. C. § 924(e)(2)(B)(ii). This was the basis for the Eleventh Circuit’s decision (“We ... hold that an attempt to commit bur *215 glary . . . presents the potential risk of physical injury to another sufficient to satisfy the ACCA’s definition of a ‘violent felony,’ ” 430 F. 3d 1150, 1157 (2005)), and it is the center of the parties’ dispute before this Court.
The problem with the Court’s approach to determining which crimes fit within the residual provision is that it is almost entirely ad hoc. This crime, the Court says, does “involv[e] conduct that presents a serious potential risk of physical injury to another.” That gets this case off our docket, sure enough. But it utterly fails to do what this Court is supposed to do: provide guidance concrete enough to ensure that the ACCA residual provision will be applied with an acceptable degree of consistency by the hundreds of district judges who impose sentences every day. The one guideline the Court does suggest is that the sentencer should compare the unenumerated offense at issue with the “closest analog” among the four offenses that are set forth (burglary, arson, extortion, and crimes involving the use of explosives), and should include the unenumerated offense within ACCA if the risk it poses is “comparable.” Ante, at 203. The principal attraction of this test, I suspect, is that it makes it relatively easy to decide the present case (though, as I shall subsequently discuss, I think the Court reaches the wrong conclusion as to whether attempted burglary poses a comparable risk). Assuming that “comparable” means “about the same,” the Court’s test does provide some guidance where the most closely analogous offense is clear (as here) and the risk is comparable. But what if, as will very often be the case, it is not at all obvious which of the four enumerated offenses is the closest analog — or if (to tell the truth) none of them is analogous at all? Is, for example, driving under the influence of alcohol more analogous to burglary, arson, extortion, or a crime involving use of explosives? And if an analog is identified, what is to be done if the offense at issue does not present a comparable risk? The Court declines to say, but it seems inconceivable that it means the offense to *216 be excluded from ACCA for that reason. For example, it does not comport with any conceivable congressional intent to disqualify an unenumerated crime that is most analogous to arson and presents nowhere near the risk of injury posed by arson, but presents a far greater risk of injury than burglary, which Congress has explicitly included. Thus, for what is probably the vast majority of cases, today’s opinion provides no guidance whatever, leaving the lower courts to their own devices in deciding, crime-by-crime, which conviction “involves conduct that presents a serious potential risk of physical injury to another.” It will take decades, and dozens of grants of certiorari, to allocate all the Nation’s crimes to one or the other side of this entirely reasonable and entirely indeterminate line. Compare ante, at 204 (concluding that attempted burglary poses sufficient risk), with Leocal v. Ashcroft, 543 U. S. 1 (2004) (concluding that driving under the influence of alcohol does not pose a “substantial risk that physical force against the person or property of another may be used,” 18 U.S. C. § 16(b)).
Imprecision and indeterminacy are particularly inappropriate in the application of a criminal statute. Years of prison hinge on the scope of ACCA’s residual provision, yet its boundaries are ill defined. If we are not going to deny effect to this statute as being impermissibly vague, see Part III, infra, we have the responsibility to derive from the text rules of application that will provide notice of what is covered and prevent arbitrary or discriminatory sentencing. See Kolender v. Lawson, 461 U. S. 352, 357 (1983). Offenders should be on notice that a particular course of conduct will result in a mandatory minimum prison term of 15 years. The Court prefers to keep them guessing.
II
The residual provision of clause (ii) of ACCA’s definition of violent felony — the clause that sweeps within ACCA’s ambit any crime that “otherwise involves conduct that presents a *217 serious potential risk of physical injury to another” — is, to put it mildly, not a model of clarity. I do not pretend to have an all-encompassing solution that provides for crystal-clear application of the statute in all contexts. But we can do much better than today’s opinion with what Congress has given us.
A
The Eleventh Circuit properly sought to resolve this case by employing the “categorical approach” of looking only to the statutory elements of attempted burglary. See 430 F. 3d, at 1154, 1156-1157. This “generally prohibits the later court from delving into particular facts disclosed by the record of conviction, thus leaving the court normally to ‘look only to the fact of conviction and the statutory definition of the prior offense.’” Shepard v. United States, 544 U. S. 13, 17 (2005) (quoting Taylor v. United States, 495 U. S. 575, 602 (1990)). As the Court does, ante, at 202,1 would also begin with this approach.
The Government would have us provide some certainty— at least enough to decide the present ease — by holding that the attempt to commit a crime of violence should be treated the same as the completed crime. It points out that various federal laws, and many state laws, punish attempt with the same sanction as the completed crime. See Brief for United States 18-20. This would be persuasive if punishment were meted out solely on the basis of the risk of physical injury that a crime presents. It seems to me, however, that similar punishment does not necessarily imply similar risk; it more likely represents a judgment that the two crimes display a similar degree of depravity deserving of punishment or needful of deterrence. A person guilty of attempted burglary may not have placed anyone at physical risk, but he was just as willing to do so as the successful burglar. It seems to me impossible to say that equivalence of punishment suggests equivalence of imposed risk. I therefore look elsewhere for some clarification of the statutory text.
*218 First to invite analysis is the word Congress placed at the forefront of the residual provision: “otherwise.” When used as an adverb (as it is in § 924(e)(2)(B)(ii), modifying the verb “involves”), “otherwise” is defined as “[i]n a different manner” or “in another way.” Webster’s New International Dictionary 1729 (2d ed. 1954). Thus, the most natural reading of the statute is that committing one of the enumerated crimes (burglary, arson, extortion, or crimes involving explosives) is one way to commit a crime “involving] conduct that presents a serious potential risk of physical injury to another”; and that other ways of committing a crime of that character similarly constitute “violent felon[ies].” In other words, the enumerated crimes are examples of what Congress had in mind under the residual provision, and the residual provision should be interpreted with those examples in mind. This commonsense principle of construction is sometimes referred to as the canon of ejusdem generis: “jW]hen a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed.” Black’s Law Dictionary 535 (7th ed. 1999) (Black’s); see, e. g., Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler, 537 U. S. 371, 384-385 (2003). In this case, the application of that principle suggests that what the residual provision means by the general phrase “conduct that presents a serious potential risk of physical injury to another” is conduct that resembles, insofar as the degree of such risk is concerned, the previously enumerated crimes.[1]
*219 In another context, I might conclude that any degree of risk that is merely similar, even if slightly less, would qualify. Obviously, such an interpretation would leave a good deal of ambiguity on the downside: How low on the risk scale can one go before the risk becomes too dissimilar from the enumerated crimes? Since the text sets forth no criterion, courts might vary dramatically in their answer. Cf. Leocal, 543 U. S. 1 (reversing the Eleventh Circuit’s determination that driving under the influence of alcohol qualifies as a crime of violence under 18 U. S. C. § 16). Where it is reasonably avoidable, such indeterminateness is unacceptable in the context of criminal sanctions. The rule of lenity, grounded in part on the need to give “ ‘fair warning’ ” of what is encompassed by a criminal statute, United States v. Bass, 404 U. S. 336, 348 (1971) (quoting McBoyle v. United States, 283 U. S. 25, 27 (1931)), demands that we give this text the more narrow reading of which it is susceptible. The requirement that the degree of risk be similar to that for the enumerated crimes means that it be no lesser than the risk posed by the least dangerous of those enumerated crimes.
B
I would turn, then, to the next logical question: Which of the four enumerated crimes — burglary, arson, extortion, or crimes involving use of explosives — poses the least “serious potential risk of physical injury to another”? The two that involve use of fire or explosives cannot possibly qualify. Thus, the question I must address is whether burglary or extortion poses a lesser risk. To do so, I must first define those crimes.
In Taylor, we defined “burglary” as used in the very provision of ACCA at issue here. We first determined that “‘burglary’ in §924(e) must have some uniform definition independent of the labels employed by the various States’ criminal codes.” 495 U. S., at 592. We considered but rejected the common-law definition, finding that “the contem *220 porary understanding of ‘burglary’ has diverged a long way from its common-law roots.” Id., at 593. Ultimately, we concluded that “Congress meant by ‘burglary’ the generic sense in which the term is now used in the criminal codes of most States.” Id., at 598. To determine that sense, we looked for guidance to 2 W. LaFave & A. Scott, Substantive Criminal Law (1986), and the American Law Institute’s Model Penal Code (1980). We defined “burglary” as “any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.” Taylor, supra, at 599.
In defining “extortion” for purposes of ACCA, I would follow the same approach. “At common law, extortion was a property offense committed by a public official who took ‘any money or thing of value’ that was not due to him under the pretense that he was entitled to such property by virtue of his office.” Scheidler v. National Organization for Women, Inc., 537 U. S. 393, 402 (2003) (quoting 4 W. Blackstone, Commentaries on the Laws of England 141 (1769), and citing 3 R. Anderson, Wharton’s Criminal Law and Procedure § 1393, pp. 790-791 (1957)); see also 3 W. LaFave, Substantive Criminal Law §20.4 (2d ed. 2003). As with burglary, however, modern conceptions of extortion have gone well beyond the common-law understanding. In the Hobbs Act, for example, Congress “explicitly ‘expanded the common-law definition of extortion to include acts by private individuals.’” Scheidler, supra, at 402 (quoting Evans v. United States, 504 U. S. 255, 261 (1992)). And whereas the Hobbs Act retained the common-law requirement that something of value actually be acquired by the extortionist, Scheidler, supra, at 404-405, the majority of state statutes require only “that the defendant make a threat with intent thereby to acquire the victim’s property,” 3 LaFave, Substantive Criminal Law *221 § 20.4(a)(1), at 199 (emphasis added). Further, under most state statutes, the category of qualifying threats has expanded dramatically, to include threats to: “kill the victim in the future,” “cause economic harm,” “'bring about or continue a strike, boycott or other collective unofficial action,’ ” “unlawfully detain,” “accuse the victim of a crime,” “expose some disgraceful defect or secret of the victim which, when known, would subject him to public ridicule or disgrace,” and “impair one’s credit or business repute.” Id., § 20.4(a)(4), at 200, 201.
The Model Penal Code’s definition of “Theft by Extortion” reflects this expansive modern notion of the crime:
“A person is guilty of theft [by extortion] if he purposely obtains property of another by threatening to:
“(1) inflict bodily injury on anyone or commit any other criminal offense; or
“(2) accuse anyone of a criminal offense; or
“(3) expose any secret tending to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute; or
“(4) take or withhold action as an official, or cause an official to take or withhold action; or
“(5) bring about or continue a strike, boycott or other collective unofficial action, if the property is not demanded or received for the benefit of the group in whose interest the actor purports to act; or
“(6) testify or provide information or withhold testimony or information with respect to another’s legal claim or defense; or
“(7) inflict any other harm which would not benefit the actor.” § 223.4, at 201.
Other federal statutes, including the Hobbs Act, 18 U. S. C. § 1951, the Travel Act, § 1952 (2000 ed. and Supp. IV), and the Racketeer Influenced and Corrupt Organizations Act *222 (RICO), § 1961 et seq., use a similarly broad conception of extortion. See United States v. Nardello, 393 U. S. 286 (1969) (Travel Act); Scheidler, supra (Hobbs Act and RICO).[2]
The word “extortion” in ACCA’s definition of “violent felony” cannot, however, incorporate the full panoply of threats that would qualify under the Model Penal Code, many of which are inherently nonviolent. I arrive at this conclusion for two reasons: First, another canon of statutory construction, noscitur a sociis, which counsels that “the meaning of an unclear word or phrase should be determined by the words immediately surrounding it.” Black’s 1084; see Keffeler, 537 U. S., at 384-385. Of course noscitur a sociis is just an erudite (or some would say antiquated) way of saying what common sense tells us to be true: “[A] word is known by the company it keeps,” Jarecki v. G. D. Searle & Co., 367 U. S. 303, 307 (1961) — that is to say, which of various possible meanings a word should be given must be determined in a manner that makes it “fit” with the words with which it is closely associated. The words immediately surrounding “extortion” in § 924(e)(2)(B)(ii) are “burglary,” “arson,” and crimes “involv[ing] use of explosives.” The Model Penal Code’s sweeping definition of extortion would sit uncomfortably indeed amidst this list of crimes which, as the “otherwise” residual provision makes plain, are characterized by their potential for violence and their risk of physical harm to others. ACCA’s usage of “extortion” differs from the con *223 text in which the word appears in the Travel Act, where it is one of a list of crimes “often used by organized crime to collect. . . revenue,” Nardello, supra, at 291, n. 8, including bribery. And it differs from the context in which “extortion” appears in RICO, where it is part of a laundry list of nearly every federal crime under the sun. See 18 U. S. C. § 1961(1) (2000 ed., Supp. IV).[3]
What is suggested by the canon is reinforced by the fact that both the original common-law notion of extortion, and the full expanse of the modern definition, include crimes so inherently unlikely to cause physical harm that it would set the bar of the residual provision at a level that could embrace virtually any offense — making the limitation to “serious potential risk of physical injury to another” utterly incomprehensible.[4] See Part III, infra. I therefore assume that ex *224 tortion under ACCA is: the obtaining of something of value from another, with his consent, induced by the wrongful use or threatened use of force against the person or property of another. Cf. Leocal, 543 U. S., at 13 (discussing the relationship between the “use of force against the person or property of another” and “crime[s] of violence under 18 U. S. C. § 16”).
One final consideration is worthy of mention. I must make sure that my restricted definition of generic extortion does not render the inclusion of extortion in § 924(e)(2)(B)(ii) superfluous in light of § 924(e)(2)(B)(i). “It is our duty to give effect, if possible, to every clause and word of a statute.” Duncan v. Walker, 533 U. S. 167, 174 (2001) (internal quotation marks omitted). Clause (i) already includes in ACCA’s definition of “violent felony” any crime that “has as an element the use, attempted use, or threatened use of physical force against the person of another.” My narrow definition of extortion passes the surplusage test only if it includes crimes that would not be covered by this provision. That is not a problem, since my definition includes the use or threatened use of force against property, whereas clause (i) is limited to force against the person. Thus, the obtaining of someone else’s money by threatening to wreck his place of business would fit within clause (ii) but not within clause (i).
Having defined burglary and extortion, I return to the question that launched this investigation in the first place: Which of the two poses the least “serious potential risk of physical injury to another”? Recall the definitions: burglary is the “unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime”; extortion is “the obtaining of something of value *225 from another, with his consent, induced by the wrongful use or threatened use of force against the person or property of another.” Every victim of extortion is the object of a threat, to his person or his property; if he ignores that threat, or resists it by seeking to protect his property, he may be harmed. Burglary, on the other hand, involves only the possibility that a confrontation will take place while the crime is underway; the risk of physical harm can become a reality only if the property owner happens to be present, a situation which the burglar ordinarily seeks to avoid. The extortionist, moreover, has already expressed his willingness to commit a violent act; the burglar may be prepared to flee at the first sign of human presence. I think it obvious that burglary is less inherently risky than extortion, and thus the least inherently risky of the four crimes enumerated in § 924(e)(2)(B)(ii).
C
Having concluded in Part II-A that a crime may qualify under ACCA’s violent felony residual provision only if it poses at least as much risk of physical injury to another as the least risky of the enumerated crimes; and in Part II-B that the least risky of the enumerated crimes is burglary; I am finally able to turn to the ultimate question posed by this ease: Does attempted burglary categorically qualify as a violent felony under ACCA’s residual provision? Or as my analysis has recast that question, does attempted burglary categorically involve conduct that poses at least as much risk of physical injury to another as completed burglary? Contrary to what the Court says, ante, at 203-207, the answer must be no.
In Taylor, we discussed the risks posed by the conduct involved in a completed burglary. We found it significant that a burglary involves “invasion of victims’ homes or workplaces,” 495 U. S., at 581 (internal quotation marks and brackets omitted), and we dwelled on such an invasion’s “inherent potential for harm to persons,” id., at 588. In com *226 paring attempted burglary to completed burglary, the Court focuses almost exclusively on “the possibility of a face-to-face confrontation between the burglar and a third party. ” Ante, at 203. But it ignores numerous other factors that make a completed burglary far more dangerous than a failed one: the closer proximity between burglar and victim where a confrontation takes place inside the confined space of the victim’s home; the greater likelihood of the victim’s initiating violence inside his home to protect his family and property; the greater likelihood that any confrontation inside the home will be between the burglar and the occupant of the home, rather than the police. The so-called “confrontation” the Court envisions between a would-be burglar and a third party while the burglar is still outside the home is likely to consist of nothing more than the occupant’s yelling “Who’s there?” from his window, and the burglar’s running away. It is simply not the case, as the Court apparently believes, that would-be home entries are often reduced to attempted home entries by physical confrontation between homeowner and criminal while the latter is still outside the house. (One must envision a householder throwing open his front door, shotgun in hand, just as the would-be burglar is trying to pick the lock.)
As we have previously stated, it is “[t]he fact that an offender enters a building to commit a crime [that] creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.” Taylor, supra, at 588 (emphasis added); see also Leocal, supra, at 10 (“[B]urglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime” (emphasis added)). By definition, a perpetrator who has been convicted only of attempted burglary has failed to make it inside the home or workplace. (Indeed, a criminal convicted only of attempted burglary almost certainly injured no one; otherwise, he *227 would have been convicted of something far more serious, such as assault or murder.) Thus, the full extent of the risk that burglary poses — the entry into the home that makes burglary such a threat to the physical safety of its victim— is necessarily absent in attempted burglary, however “attempt” is defined.
Because attempted burglary categorically poses a less “serious potential risk of physical injury to another” than burglary, the least risky of ACCA’s enumerated crimes, I would hold that it cannot be a predicate “violent felony” for purposes of ACCA’s mandatory minimum sentencing enhancement, § 924(e) (2000 ed. and Supp. IV), regardless of how close a State’s attempt statute requires the perpetrator come to completing the underlying offense.[5]
D
The Court observes, with undoubted accuracy, that my approach is not perfect. It leaves it to courts to decide, “[without hard statistics” to guide them, ante, at 210, the degree of risk of physical injury posed by various crimes. But this is an imponderable that cannot be avoided when dealing with a statute that turns upon “a serious potential risk of physical injury to another.” It inheres in the Court’s puny solution as well (how does the Court know that attempted burglary poses the same risk as burglary?). What this dissent must establish is not that my solution is perfect, but that it is substantially better than what the Court proposes. And there is little doubt of that. For in addition to *228 leaving up in the air for judicial determination how much risk of physical injury each crime presents, the Court’s uninformative opinion leaves open, to be guessed at by lower courts and by those subjected to this law: (1) whether the degree of risk covered by the residual provision is limited by the degrees of risk presented by the enumerated crimes;[6] (2) if so, whether extortion is to be given its broadest meaning, which would embrace crimes with virtually no risk of physical injury; and most importantly (3) where in the world to set the minimum risk of physical injury that will qualify. This indeed leaves the lower courts and those subject to this law to sail upon a virtual sea of doubt. The only thing the Court decides (and that, in my view, erroneously) is that attempted burglary poses the same risk of physical injury as burglary, and hence is covered without the need to address these other bothersome questions (how wonderfully convenient!).
It is only the Court’s decision-averse solution that enables it to accuse me of “unnecessarily deciding] ” the meaning of extortion, ante, at 209. The Court accurately, but quite irrelevantly, asserts the following:
“[E]ven if an unenumerated offense could not qualify without presenting at least as much risk as the least risky of the enumerated offenses, it would not be necessary to identify the least risky of those offenses in order to decide this case. Rather, it would be sufficient to establish simply that the unenumerated offense pre *229 sented at least as much risk as one of the enumerated offenses.” Ante, at 209-210 (emphasis added).
That is true enough, and I would be properly criticized for reaching an unnecessary question if, like the Court, I found attempted burglary to be as risky as burglary. Since I do not, however, it is unavoidable that I determine the meaning of extortion, in order to decide whether attempted burglary is less risky than that. The Court’s criticism amounts to nothing more than a procedural quibble: Instead of deciding, as I have, (1) that arson and the use of explosives are the most risky of the enumerated crimes; (2) that as between burglary and extortion, burglary is the less risky (a determination requiring me to decide the meaning of extortion); and finally (3) that attempted burglary is less risky than burglary, I should have decided (1) that attempted burglary is less risky than arson, the use of explosives, and burglary; and only then (2) that attempted burglary is less risky than extortion (a determination requiring me to decide the meaning of extortion). Perhaps so, but it is surely a distinction without a real-world difference. Under either approach, determining the meaning of extortion is unquestionably necessary.
Ill
Congress passed ACCA to enhance punishment for gun-wielding offenders who have, inter alia, previously committed crimes that pose a “serious potential risk of physical injury to another.” Congress provided examples of crimes that meet this eminently reasonable but entirely abstract condition. Unfortunately, however, the four examples have little in common, most especially with respect to the level of risk of physical injury they pose. Such shoddy draftsmanship puts courts to a difficult choice: They can (1) apply the ACCA enhancement to virtually all predicate offenses, see n. 4, supra; (2) apply it case by case in its pristine abstrae *230 tion, finding it applicable whenever the particular sentencing judge (or the particular reviewing panel) believes there is a “serious potential risk of physical injury to another” (whatever that means); (3) try to figure out a coherent way of interpreting the statute so that it applies in a relatively predictable and administrable fashion to a smaller subset of crimes; or (4) recognize the statute for the drafting failure it is and hold it void for vagueness, see Kolender, 461 U. S., at 357; Lanzetta v. New Jersey, 306 U. S. 451, 453 (1939).
I would choose either the third option (which I have tried to implement) or the fourth, since I believe the first two to be impermissible. If Congress wanted the first — subjecting all repeat offenders to a 15-year mandatory minimum prison term — it could very easily have crafted a statute which said that. ACCA, with its tedious definition of “violent felony,” was obviously not meant to have such an effect. The second option (the one chosen by the Court today) — essentially leaving it to the courts to apply the vague language in a manner that is ex ante (if not at the end of the day) highly unpredictable — violates, in my view, the constitutional prohibition against vague criminal laws.[7] Congress has simply abdicated its responsibility when it passes a criminal statute insusceptible of an interpretation that enables principled, predictable application; and this Court has abdicated its responsibility when it allows that. Today’s opinion permits *231 an unintelligible criminal statute to survive uncorrected, unguided, and unexplained. I respectfully dissent.

 The Court imprecisely identifies the common characteristic of the enumerated offenses, and therefore the defining characteristic of the residual provision, as crimes that “create significant risks of bodily injury or confrontation that might result in bodily injury.” Ante, at 199 (emphasis added). Of course, adding the word “confrontation” is a convenient way of shoehoming attempted burglary into the ambit of the residual provision, but it is an invention entirely divorced from the statutory text.

 The Hobbs Act contains its own definition of extortion: “the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.” 18 U. S. C. § 1951(b)(2). In Nardello and Scheidler — where we were required to define generic extortion for purposes of the Travel Act and RICO, both of which leave the term undefined — we defined it as “obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats.” Scheidler, 537 U. S., at 409 (internal quotation marks omitted); see also Nardello, 393 U. S., at 290, 296 (agreeing with the Government that extortion means “obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats”).

 Two Courts of Appeals have also demonstrated the conundrum posed by Congress’s inclusion of extortion in ACCA’s list of enumerated violent felonies. See United States v. DeLuca, 17 F. 3d 6, 8 (CA1 1994) (“The linchpin of [appellant’s] theory is the suggestion that all extortions are not equal. . . . [W]e give appellant high marks for ingenuity”); United States v. Anderson, 989 F. 2d 310, 312 (CA9 1993) (Kozinski, J.) (“[D]etermin[ing] whether a crime [is a violent felony]... is not, with regard to ‘extortion,’ an easy matter. In Taylor [v. United States, 495 U. S. 575 (1990)], the Court focused on the interstate consensus on the definition of ‘burglary,’ ... but there’s no such consensus on extortion.... It’s impossible to know which definition the legislators who voted for [ACCA] had in mind. Quite likely most of them weren’t thinking of any particular definition at all”). These Courts ultimately decided to use different definitions of extortion. See DeLuca, supra, at 9 (deciding on the Model Penal Code approach); Anderson, supra, at 313 (deciding on the Hobbs Act definition).

 The Court explains, for example, that modern extortion could include “an anonymous blackmailer threatening] to release embarrassing personal information about the victim unless he is mailed regular payments,” a crime involving a “risk of physical injury to another approaching] zero.” Ante, at 208. Thus, were the complete modern notion of extortion adopted, it is dear that extortion would be the least risky of the four enumerated crimes. That would mean that any crime posing at least as much risk of physical injury as extortion would qualify under the ACCA residual provision. But virtually any crime could qualify, so that courts would have the power to subject almost any repeat offender to ACCA’s *224 15-year mandatory minimum. Indeed, this seems to be the reality of what is taking place in the lower courts. See, e. g., United States v. Johnson, 417 F. 3d 990 (CA8 2005) (operating a dump truck without consent of the owner is a violent felony under ACCA); United States v. Springfield, 196 F. 3d 1180 (CA10 1999) (“walkaway” escape from prison honor camp is a violent felony under ACCA).

 There is no need to apply the modified categorical approach in this case. Under that approach, the most the Government could achieve would be to narrow the type of Florida burglary underlying James's conviction so that it falls within generic ACCA burglary. As I discussed above, however, even the attempt to commit a generic ACCA burglary could not qualify as a violent felony under ACCA. Thus, there is no need to remand; the Eleventh Circuit should simply be reversed.

 The Court plays with this question, but does not resolve it, merely stating that there is a “possibility that an offense may present ‘a serious risk of physical injury to another’ without presenting as great a risk as any of the enumerated offenses.” Ante, at 209. Of course, in light of its ultimate conclusion regarding attempted burglary, the Court could not resolve this question without being guilty of what it accuses me of: “unnecessarily decid[ing] an important question,” ibid.; any pronouncement on this point would be pure dictum.

 The Court contends that the provision at issue here, even when left entirely unexplained (as today’s opinion skillfully accomplishes) cannot be unconstitutionally vague, because “[similar formulations have been used in other federal and state criminal statutes.” Ante, at 210, n. 6. None of the provisions the Court cites, however, is similar in the crucial relevant respect: None prefaces its judidally-to-be-determined requirement of risk of physical injury with the word “otherwise,” preceded by four confusing examples that have little in common with respect to the supposedly defining characteristic. The phrase “shades of red,” standing alone, does not generate confusion or unpredictability; but the phrase “fire-engine red, light pink, maroon, navy blue, or colors that otherwise involve shades of red” assuredly does so.